THE JONES & LAUGHLIN STEEL COMPANY, Defendant in Error, *vs.* ANDREW J. GRAHAM, Plaintiff in Error.

*Opinion filed April 20, 1916—Rehearing denied June 8, 1916.*

1. CONTRACTS—*character of promise depends upon intention of the parties.* No matter what form of expression is used, the character of a promise depends upon the intention of the parties and what they mutually understood the language to mean.

2. SAME—*when contract is an original undertaking.* Where a person, in order to assist a friend whose property has been levied on and advertised for sale to satisfy several judgments, agrees with the judgment creditors that the judgments shall be assigned to him, that he will purchase the property of the debtor and organize a corporation and cause the corporation to execute notes for the amount of the judgment indebtedness and exchange them for notes of the judgment debtor, and that he will acquire and deposit with a trust company fifty-one per cent of the stock of the corporation to secure the notes or if such plan fails he will pay the notes of the judgment debtor, the agreement is an original undertaking and the original promisee's rights will pass by assignment.

3. SAME—*effect where suit was brought in name of assignee before passage of statute authorizing such practice.* The fact that an action on a non-negotiable contract was brought in the name of the assignee of the original promisee before the passage of the act of 1907 authorizing such practice is not ground for reversing the judgment, where the case was not tried until long after the passage of the act of 1907, at which time the action was in proper form.

4. SAME—*objection that judgment exceeds ad damnum cannot be first raised on appeal.* The fact that a judgment for the correct amount of the principal and interest due upon certain notes at the time the judgment was rendered exceeds the *ad damnum* laid in the declaration, filed some eight years before the judgment was rendered, cannot be relied upon as ground for reversal, where no specific objection to that effect was made in the trial court.

WRIT OF ERROR to the Branch "B" Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

WILLIAM A. DOYLE, for plaintiff in error.

MUSGRAVE, OPPENHEIM & LEE, for defendant in error.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

This case comes to this court by writ of *certiorari* to review a judgment of the Appellate Court for the First District affirming a judgment of the superior court of Cook county in favor of defendant in error, the Jones & Laughlin Steel Company, a corporation, against Andrew J. Graham, plaintiff in error. A demurrer to the declaration was overruled and defendant pleaded to the merits. We adopt the statement of the case and of the evidence made by the Appellate Court, which we find to be substantially correct. A number of judgments had been rendered against William D. Kent before the making of the agreement hereinafter set out in the Appellate Court statement, and his property had been levied upon and advertised for sale under one or more of said judgments. Other creditors than defendant in error are referred to or mentioned in the statement of the case made by the Appellate Court but defendant in error is the only one interested in this suit. The statement of the case made by the Appellate Court is as follows:

"Prior to the day set for the sale on said executions, and on January 24, 1900, Andrew J. Graham, a Chicago banker and a friend of Kent, entered into a written agreement with said Jones & Laughlins, Limited, (hereinafter referred to as Jones & Laughlins,) and also into a similar written agreement with the co-partnership of W. P. Rend & Co. In the first mentioned agreement it was agreed that Graham should purchase, and Jones & Laughlins should sell, a certain judgment for $1489.52, (which the latter had received in the superior court of Cook county on January 9, 1900, against Kent,) upon the terms and conditions therein specified. It was further provided in said agreement (1) that Graham was 'to cause the judgment debtor (Kent) to execute and deliver to said Jones & Laughlins' two notes, dated January 24, 1900, for the sum of $752.30 each, due in six and nine months after date, respectively, and bearing interest at

six per cent per annum from date; that Jones & Laughlins was thereupon to assign to Graham said judgment, together with all rights thereunder; (3) that Graham was to purchase all of the merchandise and fixtures advertised for sale by the sheriff at 18 to 22 North Union street, Chicago, 'at such price as he may deem best,' and to obtain from said Kent a proper bill of sale therefor; (4) that Graham was thereupon 'to form, or cause to be formed, an Illinois corporation with a capital stock of $25,000,' divided into 250 shares of a par value of $100 each, 'and to transfer to said corporation' all of the merchandise and fixtures so purchased by him, 'and to receive therefor from said corporation fifty-one per cent of said capital stock,' to-wit, $12,750 worth at par, and no more, and no other consideration or payment from said corporation; that said merchandise and fixtures so transferred were 'to be free from all liens, claims or demands, either patent or secret, of whatever name or nature,' and that Graham was also to 'cause said corporation to execute and deliver to said Jones & Laughlins, Limited, in exchange for the notes to be executed and delivered by the said judgment debtor, William D. Kent, * * * two collateral promissory notes * * * for the same amounts and interest and maturing at similar times,' and that the said fifty-one per cent of the capital stock to be issued to Graham or his nominee in payment for said merchandise and fixtures was 'to be placed with some Chicago trust company to be agreed upon, as collateral security to the payment of said two notes and such other notes to other creditors of said William D. Kent as said Graham may find necessary to be given in order to carry out the plan which this agreement contemplates,' but that the aggregate of all indebtedness against said corporation at the time it commenced business was not to exceed $5000. The sixth paragraph of the agreement was as follows: 'If the said Graham fails to form said corporation under the conditions and in the manner as above set forth and fails to cause said

notes of said corporation to be given as above set out, then he is to pay said notes so given by said Kent to said Jones & Laughlins, Limited, this guarantee being the essence and basis of this agreement.' * * * Thereafter Graham caused Kent to execute and deliver to Jones & Laughlins his (Kent's) two notes for $752.30 each, and to execute and deliver to W. P. Rend & Co. a note for $305.94. Graham also acquired all of said merchandise and fixtures advertised for sale by the sheriff, obtaining from Kent a bill of sale therefor. Graham also caused to be formed, in February, 1900, with the assistance of the law firm of Oliver & Mecartney, the Illinois corporation of W. D. Kent Iron Company, with capital stock of $25,000, divided into 250 shares of a par value of $100 each. Under date of February 13, 1900, Graham executed a bill of sale of said merchandise and fixtures to Minnie H. Kent, and she, in turn, executed a bill of sale of the same, dated February 14, 1900, to said W. D. Kent Iron Company. Under date of March 2, 1900, said iron company issued to Minnie H. Kent a certificate of 128 shares of the capital stock of said iron company, fully paid and non-assessable, in payment for said merchandise and fixtures. Said 128 shares amounted to slightly more than fifty-one per cent of the capital stock of said iron company. Under date of March 2, 1900, said iron company signed two promissory notes for $752.30 each, payable to the order of Jones & Laughlins, due on July 24 and October 24, 1900, respectively, and bearing interest at six per cent per annum from January 24, 1900, and also signed one note for $305.94, payable July 1, 1900, to the order of W. P. Rend & Co., and bearing interest at six per cent per annum from January 24, 1900. During February, 1900, John S. Brown, an attorney employed by Oliver & Mecartney to attend to the legal details of organizing said iron company as a corporation, etc., informed the several attorneys of the judgment creditors of William D. Kent that it was desired that said creditors should each satisfy

their respective judgments of record rather than give an assignment of said judgments to Graham, and accordingly all of the judgment creditors subsequently satisfied of record said judgments.   The judgment against William D. Kent in favor of W. P. Rend & Co. was satisfied of record on February 23 and that of Jones & Laughlins on March 17, 1900.   Graham, although often requested by the respective attorneys for Jones & Laughlins and W. P. Rend & Co., never caused said notes of the iron company to be delivered to the respective payees thereof or caused fifty-one per cent of the capital stock of said iron company to be placed with any Chicago trust company as collateral security for said notes and other notes.   On July 27, 1905, Jones & Laughlin Steel Company, plaintiff, as successor of Jones & Laughlins, commenced the present suit in the superior court of Cook county to compel Graham to perform his alternative promise, viz., to pay said Kent notes of $752.30 each, and interest, then owned and held by it; and on the same day William P. Rend, successor to the co-partnership of W. P. Rend & Co., commenced a similar suit in said court to compel Graham to pay said Kent note of $305.94, and interest, then owned and held by said W. P. Rend.   The two cases came on for trial in June, 1913, before the court without a jury, and it was stipulated by respective counsel that evidence in both cases should be heard at the same time. On June 11, 1913, the court found the issues in the instant case in favor of the plaintiff, Jones & Laughlin Steel Company, and assessed its damages at the sum of $2712.32, and on the same day, after overruling motions for a new trial and in arrest of judgment, entered judgment on the finding against the defendant, Andrew J. Graham, which judgment said defendant by this appeal seeks to reverse.

"During the year 1900, and subsequently, Jones & Laughlins were represented in this matter by attorney H. H. C. Miller, and in his absence by attorney W. S. Oppenheim; W. P. Rend & Co. were represented by attorney

Louis C. Ehle; and the Richards & Kelly Manufacturing Company, another creditor, was represented by attorney Charles A. Koepke. On April 3, 1900, attorney John S. Brown wrote said attorneys for said creditors as follows: 'I now have in my possession the notes executed by W. D. Kent Iron Company pursuant ·to your ·contract with Mr. Andrew J. Graham. I have also the stock certificate which was to be deposited as collateral to said notes. As the contract with the various parties did :not provide for a separation of the stock, it will be necessary to have a meeting of all the parties and to have an agreement with all the parties. I invite you to be present at our office on April 6, three o'clock P. M., for the purpose of formulating a collateral agreement and agreeing upon a trust company to hold the stock certificates and notes executed by W. D. Kent Iron Company. Please bring in the old notes.' Accordingly a meeting was held on April 6, 1900, at which the defendant, Graham, attorney John S. Brown, and attorneys Miller, Ehle and Koepke, were present. John S. Brown testified that at this meeting 'somebody suggested,—either myself or someone else,— * * * that a trust company would have to be appointed, under the contract, with which ·to deposit the collateral. * * * I had the notes there and stock ready to deposit when the parties agreed on a trust company. * * * Somebody said there that the matter would have to go over because the parties were not all represented and they would have to consider what trust company to appoint.' Louis C. Ehle testified that at this meeting 'the talk was about carrying out this agreement of Mr. Graham;' that 'Mr. Miller or myself asked what was the situation, and Mr. Graham, in substance, said that he would make a report in regard to the matter, and then Mr. Brown raised the matter of appointment of a trustee, and either Mr. Miller or myself said there was not anything in , our contract about the other parties but that we were willing to have a reliable trustee, and the Security Title and

Trust Company was suggested;' that Mr. Miller, Mr. Koepke and Ehle at this time represented all the creditors involved and that all expressed themselves as being satisfied that said Security company act as trustee; that other meetings were had in the endeavor to get the said notes of the iron company delivered and the stock deposited, without avail; that on July 11, 1900, he (Ehle) wrote Graham to the effect that said Kent note of $305.94, payable to the order of W. P. Rend & Co., due on July 1, was still unpaid, and that unless the same was taken up at once, action against Graham on his agreement would be commenced; that Graham returned the letter with the following indorsement thereon: 'I done all you ask except I can't force you or Mr. Rend to take note. Mr. Brown, with Oliver & Mecartney, has note;' that other meetings were had in September, 1900, and February, 1901, but that said creditors were never able to get said notes of the iron company or said fifty-one per cent of the stock deposited as collateral security thereto; that the notes were never tendered to him, (Ehle,) and that 'all that ever was said by Mr. Brown or Mr. Graham with reference to that matter was that it would be attended to, or something to that effect,—something in the way of putting it off.' Charles A. Koepke testified that he was present at several meetings with Ehle, Miller and Graham when 'we were trying to get Mr. Graham to carry out his agreement,' but that the creditors could never get the notes, and that neither Graham nor anyone else, at any of the meetings, ever tendered to either Koepke or Ehle any notes of the iron company. W. S. Oppenheim testified that in Mr. Miller's absence he was present at one or more meetings of said attorneys and Graham; that he on one occasion met Ehle, Koepke and Graham; that he went to the meeting for the purpose of getting certain notes under said contract but that he did not get them; that no tender of any of the notes of the iron company was ever made to him by either Brown or Graham, and that H. H..C. Miller

died in October, 1910. The defendant, Graham, testified that he attended several meetings; that he was never at a meeting where all the parties interested were present; that at the meetings in April and September, 1900, the stock and notes were ready; that finally he 'left the stock and notes with John S. Brown to deliver to the parties when they agreed upon a trustee. * * * I said to Mr. Brown to deliver the stock and notes when requested by the creditors and a trustee was selected to receive the same.' John S. Brown further testified: 'One of the reasons that I did not deposit the notes and stock which I had was because some creditor was not there. I think that was the reason. Because, as a consequence, the necessary parties had not agreed on a trust company.' "

The principal and material contentions of plaintiff in error are, (1) the contract is a special, conditional guaranty or collateral undertaking and no right or interest under it can pass to another by assignment; (2) the liability of plaintiff in error was contingent upon his failure to perform the agreement on his part, and it is insisted he did all that was required of him and no liability therefore attached to him; (3) the suit cannot be maintained in the name of the assignee; (4) the judgment exceeded the *ad damnum.*

We construe the contract to be an original undertaking on the part of plaintiff in error. It was not an agreement that he would pay the debt of Kent if Kent failed to pay it himself. In consideration of the property being released from liability to pay the judgment of Jones & Laughlins, Limited, plaintiff in error agreed to, and did, acquire the property by bill of sale, and thereafter, through an intermediary, caused it to be conveyed to the corporation he agreed to organize. The effect of the contract was to relieve Kent of liability to pay the judgment and substitute either plaintiff in error or the corporation he agreed to organize. While Kent's unsecured notes were to be held by Jones & Laughlins, Limited, until the corporation was or-

ganized and gave its notes secured by its stock, it is evident the parties understood no reliance was placed upon Kent to pay the debt but it was to be paid either by plaintiff in error or the corporation he agreed to organize, in the manner provided by the contract. No matter what form of expression is used, the character of the promise depends upon the intention of the parties and what they mutually understood the language used meant. (*Davis* v. *Patrick,* 141 U. S. 479.) It seems beyond question that when plaintiff in error agreed to take the property of Kent which was subject to the payment of the judgments and organize a corporation which he would have execute its notes and secure them by its stock or if he failed to do this he would pay the indebtedness himself, credit was given to and reliance placed upon him by Jones & Laughlins, Limited. It was therefore an original undertaking on his part and the original promisee's right therein passed to defendant in error by assignment. 1 Parsons on Contracts,—3d ed.—498; Note to *Sherman* v. *Alberts,* 126 Am. St. Rep. 486, where the question is elaborately discussed and a large number of authorities cited and reviewed.

The evidence does not sustain the contention of plaintiff in error either that he performed the agreement on his part or that his failure to do so was not his fault. We do not understand from the testimony that the failure to turn over the notes of the corporation and deposit its stock with the trustee as security was the fault of the creditors. At all events that was a question of fact, and the judgment of the Appellate Court is conclusive upon that question.

It is also contended that the suit was not maintainable in the name of defendant in error, as assignee of Jones & Laughlins, Limited. Defendant in error succeeded Jones & Laughlins, Limited, in 1902 and became the owner of the rights of Jones & Laughlins, Limited, in the contract with plaintiff in error. The suit was brought in 1905 in the name of defendant in error, as assignee of Jones & Laugh-

273 — 25

lins, Limited. At the time the suit was begun there was no law authorizing defendant in error to sue in its own name, but the proper method of bringing suit was in the name of Jones & Laughlins, Limited, for the use of defendant in error. By section 18 of the Practice act, which was added by the revision of 1907, the owner of a chose in action not negotiable, theretofore or thereafter assigned, was authorized to sue in his own name, but the defendant was entitled to be allowed such set-offs, discounts and defenses as he might have had against the assignor before notice of the assignment. This suit was not tried until 1913. Defendant in error might at any time after the passage of the act of 1907 have brought the suit in its own name. Does the fact that it brought the suit in its own name prior to the passage of the statute require a reversal of the judgment? We think not. At the time of the trial the suit was in the name it was then authorized to be brought in, and plaintiff in error was not prejudiced in any manner. He was deprived of no defense he could have made if the suit had been brought in the name of the assignor, and was denied no right to which he was entitled by either law or justice.

The *ad damnum* laid in the declaration was $2500. The judgment was for $2712.32, and on this ground it is claimed the judgment should be reversed. The judgment was for the correct amount of principal and interest due upon the notes at the time the judgment was rendered, June 11, 1913. This question does not appear to have been specifically raised in the trial court. It cannot now be urged as a ground for reversal. *Utter* v. *Jaffray & Co.* 114 Ill. 470; *Metropolitan Accident Ass'n* v. *Froiland*, 161 id. 30; *Grand Lodge A. O. U. W.* v. *Bagley*, 164 id. 340; *Prairie State Loan Ass'n* v. *Gorrie*, 167 id. 414; *Wheatley, Buck & Co.* v. *Chicago Trust and Savings Bank*, id. 480; *Leathe* v. *Thomas*, 218 id. 246.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*