## INDIANA NATURAL GAS & OIL COMPANY v. GRAINGER, TRUSTEE.

[No. 4,711. Filed March 17, 1904. Rehearing denied June 30, 1904. Transfer denied October 27, 1904.]

CONTRACTS.—*Construction.*—In construing a contract, the court will, if possible, give effect to all its parts, and determine its true meaning from a consideration of all its provisions taken together as a whole. *p. 562.*

GAS AND OIL LEASE.—*Termination.*—*Mines and Minerals.*—A gas and oil lease "for the term of twelve years, and so long thereafter as petroleum or mineral substances can be produced in paying quantities, or the payments hereinafter provided for are made according to the terms and conditions attaching thereto," by which the lessee agreed to commence operations for drilling and mining purposes within one year from the execution of the lease, or, "in lieu thereof, for delay in commencing such operations," thereafter pay to lessor $20 per year in advance until such operations were commenced and a well completed, contemplated the development of the property, and the lessee could not hold the premises longer than twelve years by merely making the annual payments, and could hold the premises as long beyond twelve years as gas and oil could be produced in paying quantities, upon payment of the royalties and well rentals. *pp. 562–564.*

From Grant Circuit Court; *H. J. Paulus*, Judge.

Action by Charles F. Grainger, trustee, against the Indiana Natural Gas & Oil Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*W. O. Johnson, Foster Davis, J. C. Blacklidge, C. C. Shirley* and *Conrad Wolf*, for appellant.

*R. T. St. John* and *W. H. Charles*, for appellee.

ROBINSON, J.—Suit by appellee to cancel a gas and oil lease. In the second paragraph of complaint, appellee

avers that he is now, and since 1892 has been, the owner and in possession of certain described land; that on April 14, 1888, Elizabeth Morgan, the then owner, with her husband, executed and delivered to the assignor of appellant a certain instrument or lease. The lease recites that the lessors, their heirs and assigns, for and in consideration of the sum of $10 to them paid, the receipt of which is acknowledged, and for the further consideration thereinafter mentioned, and on account of covenants thereinafter contained, lease to the lessee, his heirs and assigns, two acres of a certain tract of land, which tract and the two-acre tract are described, "for the purpose and with the exclusive right of drilling and mining and operating for petroleum, gas, or any mineral substances on said land, and appropriating the said products so obtained to his [the lessee's] own use and benefit, except as hereinafter provided, and removing the same from said land, for the term of twelve years and so long thereafter as petroleum or mineral substances can be produced in paying quantities, or the payments hereinafter provided for are made according to the terms and conditions attaching thereto." The lessee is given, the privilege of using from the premises sufficient wood and water to conduct drilling and mining operations, to erect upon and move from the premises buildings, machinery, tanks, pipe-lines, and other property necessary for such business, a right of way to the places of drilling, lessee to pay all damages to growing crops. The lessee agrees to give the lessor one-eighth of all petroleum or mineral substances produced, or if gas alone should be found in sufficient quantities, and under circumstances making it profitable to pipe the same to other localities, the lessee shall pay the lessor $100 per annum for the gas from each well when so utilized, and sufficient gas to heat and light the dwelling on the premises, such payment to be accepted by the lessor as a full consideration and in lieu of any other royalty. The lessors further covenant and

agree with the lessee, his heirs and assigns, "neither by themselves nor by any other person or persons, company or corporation, in any way or manner, to cause or suffer the rights herein granted on said two acres to be executed on the balance of the land described herein, so long as this agreement as to said two acres remains in force;" the lessor to have the use of the land for tillage. The lessee agrees "to commence operations for said drilling or mining purposes within one year from the execution of this lease, or in lieu thereof for delay in commencing such operations, and as a consideration for the agreements contained herein, thereafter pay to the said party of the first part [the lessor] $20 per annum, payable in advance on the 14th day of April in each year, until such operations are commenced and a well completed;" a deposit to the credit of the lessor in a bank named to be considered a payment under the terms of the lease. Should the lessee fail to make such payments, or either of them, within thirty days from the time the same is due, then the lease to be null and void. The lease was duly acknowledged and recorded.

It is further averred that appellant became the owner of the lease by assignment in 1890, and claims to have some interest in the land on account of the lease; that at no time since the execution of the lease has the lessee, nor those claiming under him, including appellant, taken any possession of the land, and no well has been drilled thereon; that appellant caused to be paid the sum of $20 per year, for the period of twelve years, and that the same was received by appellee, and those under whom he claims, for the twelve years; that the $20 per year was received by appellee from appellant as payment for the privilege of entering thereon by appellant to prospect for oil or gas during the period of one year, for which the payments were made and for no other purpose; that at the end of the twelve years, no possession having been taken and no

well drilled, appellee refused to receive any further payments, and so notified appellant and the bank that he would not receive any further rental on the lease, but that he had elected to terminate the same; that the last $20 accepted was on the 14th day of April, 1899, which continued the lease in force until April 14, 1900; that the lease is null and void, because the term for which it was given has expired, and no well for oil or gas has been drilled, and that the same should be canceled of record. Prayer that the lease be declared void, and a commissioner appointed to cancel the same of record. A demurrer to this paragraph of complaint was overruled.

Appellant's second paragraph of answer admits the execution of the lease, and alleges that by the terms of the lease it should continue in force as long as appellant should continue to make the payments agreed upon; that a deposit in the bank named should be considered a payment under the terms of the lease; that appellant has at all times made the payments required by the lease on or before the 14th day of April each year; and that all payments were made that were due prior to the beginning of this action, according to the terms of the lease, by depositing the payments in the bank named in the lease at the times mentioned in the lease, and that nothing is due appellee. To this answer a demurrer was sustained. The complaint in this case was filed April 16, 1902.

It is a well-settled rule that in construing a contract the court will, if possible, give effect to all its parts, and that its true meaning will be determined from a consideration of all its provisions taken together as a whole. While the lease contains a stated consideration of $20, yet it is manifest that the substantial consideration that moved the grantor to execute the lease was the hope of profits or royalties if gas or oil should be found. *Gadbury* v. *Ohio, etc., Gas Co.,* 162 Ind. 9.

It is quite true that it is not the duty of the court to make

a contract for the parties, nor can the court, in the absence of fraud or bad faith, relieve a party from an improvident contract that he had voluntarily entered into.    But a consideration of the whole lease shows very clearly that it was the intention of both parties to develop the land for gas and oil.    The lessor leases the land to the lessee for the purpose and with the exclusive right of drilling, mining, and operating for oil and gas, and this extends to the whole forty-acre tract, "for the term of twelve years, and so long thereafter as petroleum or mineral substances can be produced in paying quantities, or the payments hereinafter provided for are made according to the terms and conditions attaching thereto."    The lessee agreed to commence operations for drilling and mining purposes within one year from the execution of the lease, or, "in lieu thereof, for delay in commencing such operations, and as a consideration for the agreements contained herein, thereafter pay" to the lessor $20 each year in advance, until "such operations are commenced and a well completed."

Why did the parties insert the twelve-year clause?    Appellant's argument is that during the twelve years it was bound to pay the rental, and after the twelve years it could pay it or not, at its option.    But does the lease give the appellee an option for an indefinite time either to put down a well or pay the $20 per annum?    Is the instrument an option merely, and the $20 a year the price of it?    If so, why was anything said in the lease about when operations should commence, and why was the stipulated payment to be made "until" such operations are commenced and a "well completed?"    It is not necessary to inquire whether the lessor was bound to let the lessee hold the land for twelve years without attempting to develop it, because it was held by the lessee for twelve years, and the payments for delay were accepted by the lessor.    But, giving effect to all the provisions contained in the lease, we think a reasonable and equitable interpretation is that the lessee, by mak-

ing the annual payments, could not hold the premises longer than twelve years without drilling or commencing to drill a well, and that the lessee could hold the premises as long beyond the twelve years as oil and gas could be produced in paying quantities, upon payment of the royalties and well rentals. It was manifestly intended that the property should be developed, and that it should be developed within a certain time. We think this construction gives effect to what was manifestly the controlling intention of the parties.

In *Western Pa. Gas Co.* v. *George,* 161 Pa. St. 47, 28 Atl. 1004, where a lease almost identical with that at bar, and where the term was two instead of twelve years, the court said: "The continuance of the lease beyond the definite term was contingent upon the finding of oil or gas in paying quantities, and on the payment to the lessor in such case of his share of the oil produced, or the stipulated sum for each well from which gas was obtained and sold. The primary and essential condition to any extension of the lease after the lapse of two years from its date was the finding of oil or gas in paying quantities within that time, and the secondary condition was that the rent reserved for the oil or gas found should be paid in conformity with the covenants in relation thereto." See *Federal Oil Co.* v. *Western Oil Co.,* 112 Fed. 373; *Consumers Gas Trust Co.* v. *Littler;* 162 Ind. 320.

Judgment affirmed.