BURNETT COAL MINING COMPANY *v.* SCHREPFERMAN ET AL.

[No. 11,024. Filed December 2, 1921.]

1. ESTOPPEL.—*Corporations.*—*Representations of Stockholders and Organizers.*—Where two individuals, leased to another mineral rights which they represented they owned, but for which they in fact had merely an option to lease, and such lessors thereafter formed a corporation in which they owned all the stock, except a small amount given to the son of one of them, and then had the lease executed to the corporation under their option, the separate entity of the corporation will be disregarded as to that transaction, and it will be held estopped to deny or repudiate the representations and acts of its organizers. p. 52.

2. ESTOPPEL.—*Lease of Lands.*—*Rights Subsequently Acquired by Lessor.*—*Estopped to Deny Lessee's Interest.*—Where individuals leased to another mineral rights which they represented they owned, but for which they had only an option to lease, a subsequent lease under the option to a corporation; which they organized and controlled, so that it was in effect themselves, enures, under the doctrine of estoppel, to the benefit of the prior lessees. p. 55.

3. PLEADINGS.—*Demurrer to Answer.*—*Answer Deemed True.*— In considering a demurrer to an answer, the averments of the answer must be taken to be true. p. 55.

4. MINES AND MINERALS.—*Lease of Mineral Right.*—*Enforcement of Forfeiture.*—*Right to Injunction.*—The forfeiture of a lease to mineral rights cannot be enforced by injunction. p. 55.

5. CONTRACTS.—*Elements.*—*Time.*—Time will not be regarded by equity as of the essence of a contract, unless it affirmatively appears that it was so regarded by the parties. p. 56.

6. MINES AND MINERALS.—*Lease of Mineral Rights.*—*Forfeiture.* —*Right to Remedy.*—*Adequate Legal Relief.*—Where time is not made the essence of a lease of mineral rights, and the actual damages sustained can be adequately compensated, equity will not enforce a forfeiture for delay in complying with the terms of the lease, especially where it stipulates for the payment of a specified amount for delay. p. 56.

From Vigo Superior Court; *C. A. Royse,* Judge.

Action by the Burnett Coal Mining Company against Nicholas Schrepferman and others. From a judgment for defendants, the plaintiff appeals. *Affirmed.*

*Hamill, Hickey, Evans & Danner,* for appellant.
*McNutt, Wallace, Harris & Randel,* for appellees.

NICHOLS, P. J.—Action by appellant against appellees for a permanent injunction and damages sustained as incidental to such relief.

It is averred in the complaint in substance that appellant is a corporation organized under the laws of the state for the purpose of coal mining and of doing all things incident thereto. On January 22, 1917, one Meneely was the owner of the real estate here involved and on said date, his wife joining him, entered into a written contract, lease and demise by the terms of which he granted, leased and demised to appellant all the coal and other minerals lying in and under said real estate, and the exclusive right to mine the same, and to enter upon the premises for such purpose, and to do

such other things as are necessary to such mining operations, the said lease and contract to continue for twenty years for which appellant agreed to pay certain monetary considerations. Appellant has complied with the terms of said lease and the same is still in force. Under said real estate there is a large amount of workable coal which can be mined and removed. Appellee Schrepferman and his coappellees who are his agents, servants and employes wrongfully, unlawfully and without leave, license or consent of appellant, or the owner of said real estate, or any one, entered upon said real estate with necessary tools, appliances, and materials, and began the construction of buildings and other structures, and to dig shafts under said real estate and to make general preparations for mining the coal thereunder and appellees are now mining and removing some of the coal.

Appellee Schrepferman is claiming and asserting the right to go upon said real estate and to mine and remove the coal thereunder, declares his purpose so to do, is now so mining such coal, and will continue to so do unless restrained and enjoined by the court; appellee Schrepferman's claim to said land, and things done by him are wholly without any right or license of any kind, are wrongful and unlawful and in violation of appellant's rights in and to said real estate and the coal thereunder, and seriously interfere with appellant's right to use said real estate and to mine the coal thereunder. Appellant unless prevented by appellees will remove the coal in compliance with the terms and conditions of its contract, grant and lease.

Appellant alleges damages in the sum of $500 and prays that appellees be enjoined from going upon such real estate, from placing any materials thereon in preparation for mining, from digging any shafts or remov-

ing any coal thereunder, and from claiming or asserting any right in or to said real estate or the mine, or the coal thereunder.

There was an answer by all appellees in general denial and appellee Schrepferman, hereinafter mentioned as appellee, answered in two paragraphs, the first being a general.denial, and the second averring in substance that on and prior to August, 1916, Meneely, who was the owner of the fee-simple of the real estate involved, at said time, entered into an option by which he optioned the coal thereunder to one Devonald which option was taken by said Devonald for the use and benefit of himself and one Scott. The option is set out in the answer and provides by its terms, so far as here involved, that Meneely in consideration of $1 paid by said Devonald and other considerations will, upon demand, within six months from the date of said option, convey to said Devonald or his assigns by good and sufficient warranty deed all the coal and other minerals lying under the real estate here involved, and will lease the coal under said real estate for three cents per ton of run of mine coal on royalty basis, and if said Devonald fails to commence to mine said coal within twelve months after the lease is .signed, he shall pay $20 per month until he commences to mine said coal as advance royalty, said sum to be deducted from the regular royalty when he commences to mine coal. Said Devonald and Scott were then the owners of the coal and minerals underlying certain other tracts, and on September 20, 1916, they represented to appellee that they owned all the coal and minerals underlying the real estate here involved together with the other tracts. Appellee, believing that their representations were true and relying on their statements that they were the owners of the coal underlying said real estate, entered into a written lease with them, their wives joining, which lease is set out in the

answer and provides in substance, so far as here involved, that they leased said real estate together with said other tracts to appellee for mining purposes, the lease to continue for a term of twenty years, unless the minerals and coal under said land and adjoining lands be sooner exhausted, and appellee agreed in consideration of such lease to enter upon said land and make search for coal within ninety days, and if found in sufficient thickness, quality, and quantity, and roof of sufficient strength to justify its mining, then to sink a shaft to the body of said coal, and to have it ready and completed for operation within twelve months from the date of the lease, and from thence to dig and mine coal and to pay said lessors at the rate of three cents per ton between the fifteenth and twenty-fifth of each month for all coal mined during the preceding month. Appellee agreed to mine sufficient coal after twelve months from the date of the lease to make the royalty thereon $600 annually, and in default thereof to pay said sum each year, $50 to be paid each month after the completion of the shaft or the commencing of the mining operations. No annuity was to be paid until the expiration of the first year. It was provided in the lease that the failure to comply with the covenants therein should render it null and void. In pursuance of and under the terms of said lease appellee, in the last of September and the first of October, 1916, entered upon said real estate and drilled and bored holes through the coal underlying the same, prospecting and making search for coal at an expense of $75. Said Devonald was present upon different occasions when said work was going on. In May, 1917, and thereafter, appellee delivered upon said real estate lumber, framing, timber and other materials in large quantities, to be used in the construction of the mining shops and other buildings necessary to operation, and

which said material was so used and was being used at
the time of the commencement of this action. In July,
1917, appellee bought ties and "T" rails with which to
construct a railroad switch to said mine. Prior to said
time appellee had been notified by the railroad company
that it would be impossible for it to furnish the iron
and ties with which to construct the switch, and that
appellee would have to buy them elsewhere, and it was
more than thirty days after he was so notified before
he could find any person or company who would fur-
nish him such rails or ties, and the earliest date upon
which he could procure the same was between September
25 and October 18, such material being delivered to
appellee during said period. Appellee was unable to
procure the quality and quantity of material necessary
for the construction of the mine until the last days of
August and the first days of September, 1917. As soon
as he could get such material he began the sinking of
the shaft-which was on September 4, 1917. Appellee
says that he would have had sufficient time to sink the
shaft between September 4 and September 20, and
would have had the same in condition to begin digging
and taking out coal from said shaft before September
20, 1917, except for the fact that in sinking the shaft,
which was started September 4, they struck what is
known as a wash out. After they struck said wash out
he worked thirty-two shifts, about eight hours each of
all the men that could work in said shaft, without mak-
ing any material progress in the sinking thereof. Be-
cause of such condition he was compelled to start
another shaft which he sank in twelve days on said real
estate and on or about November 1, 1917, had the same
sunk to the coal and was digging and removing coal
from under said real estate. Appellee continued at all
times the annuities required on his lease at the proper
days and dates, and now has the proper amount of an-

nuities, and is ready and willing to pay the same over to the parties entitled thereto. He has at all times lived up to the terms and conditions of said lease and contract. Appellee further says that said Devonald and his son and said Scott organized and incorporated appellant herein on November 8, 1916, of which said corporation they became the directors and officers and are now such. On January 22, 1917, said Devonald and Scott, who were then two of the directors of appellant and who had procured the option on said real estate in August, 1916, from said Meneely in the name of said Devonald, procured from said Meneely a lease under the terms of said option, which lease was executed to appellant. Said Devonald and Scott as such directors knew at the time they procured said lease from said Meneely that said Devonald and Scott had leased said real estate to appellee, and that they had represented to appellee that they owned the minerals underlying said real estate, and that appellee had entered upon said real estate, and had proceeded to carry out the terms of the lease. The lease procured by appellant from said Meneely on January 22, 1917, is set out in the answer and provides that the same shall continue for twenty years unless the coal shall be exhausted, and for the payment of the same royalty consideration as was provided in the lease made by them to appellee. At the time of the execution of said lease by said Meneely to appellant, said Scott and Devonald and his son were the board of directors and officers of appellant in full charge and control thereof, and were in full possession and knowledge of the fact that such Scott and Devonald had leased said real estate for coal mining purposes to appellee as aforesaid. Said directors knew that appellee had gone on said real estate in the fall of 1916, and had drilled test holes for coal and that he had found coal of sufficient thickness, quality and quantity and roof of sufficient strength to

justify mining, and they knew of the great amount of work that appellee was performing upon said real estate, and the great amount of expense which he was incurring in his preparation for mining and removing coal from said real estate, and that notwithstanding such knowledge they stood by and permitted appellee so to perform such work and expend such large sums of money for the purposes of removing the coal, and made no objection thereto, and never made any claims of appellee that they had or claimed any interest in the coal underlying said real estate. Appellee never knew that appellant was claiming any interest in said coal until after November 7, 1917, and until after the plaintiff had filed his complaint in this action. Appellee says that by virtue of the facts aforesaid appellant is estopped from claiming any right or interest in said real estate and prays that it be so adjudged.

A demurrer to this answer was overruled after which appellant filed a reply in denial, and the cause was submitted to the court for trial which resulted in a general finding for appellee and judgment accordingly from which this appeal is prosecuted.

The errors assigned are: (1) Overruling appellant's demurrer to appellee's second paragraph of answer, (2) overruling appellant's motion for a new trial.

Appellant challenges appellee's second paragraph of answer and contends that it is insufficient for the reason that it is not alleged that the owner or appellant ever at any time gave, granted, assigned or transferred to appellee any right, interest or estate in said real estate, or any part thereof, and that the only instrument upon which appellee bases or claims any right, or interest in said real estate or mine or right to remove the coal therefrom was the contract in said answer alleged to have been executed between said ap-

pellee and said Scott and Devonald dated September 20, 1916. Appellant further says that said answer does not show that said last named parties to said contract then had any interest in said real estate, that they or any of them could grant, convey, or assign to appellee, except an option for the lease alleged to have been held by said Devonald; that it is not alleged in said answer that said option was ever assigned to appellee, or that any interest or rights in said real estate were ever acquired by any of the parties under the terms of said option; that no contract or agreement, oral or written, made or executed by appellant to or with appellee, is set out in said paragraph of answer by which any of the rights or interests of appellant in said real estate were granted, assigned or transferred by it to appellee directly or indirectly, or that would estop appellant from asserting its right against him. But appellant, in making the foregoing statement for the purpose of showing that said second paragraph of answer is insufficient, loses sight of some very important facts which are of controlling force. It appears by said answer that two parties, namely Devonald and Scott, after obtaining an option from Meneely to purchase or lease the real estate involved, together with the right to remove the coal therefrom, represented to appellee on September 20, 1916, that they owned said real estate and the right to remove the coal therefrom, and that, relying upon said representation, appellee entered into a contract and lease with such two parties, whereby he leased said real estate for a period of twenty years, and that thereafter these same two parties who had thus executed the lease to appellee organized the appellant coal company, the sole stockholders in which were the said two parties who had executed the lease as aforesaid, after making representations to appellee by which he was induced to enter

into such lease with them, together with the son of the said Devonald. The respective holdings of these parties in such corporation does not appear in the answer but it does appear by uncontradicted evidence that out of the 500 shares in said corporation said Scott held 250 shares, the said Devonald 225, and his said son twenty-five shares.

In the case of *Rutz* v. *Obear* (1911), 15 Cal. App. 435, 115 Pac. 67, it was held that where one individual owns all of the stock of a corporation, the same is but the corporate double of the owner of the stock, and such proof destroys the separate entity of the corporation, and in such event the statements and admissions of the sole owner of the stock may be received as establishing facts from which an estoppel might arise as to the corporation.

Nothwithstanding the fact that as appears by the answer some of the stock was held by Devonald's son, it is manifest that said Devonald and Scott were the moving spirits in the negotiations that were under consideration. They by their representations induced appellee to lease the real estate involved from them; they caused the organization of the corporation and constituted together with the son the board of directors therein. They are the two that on January 22, 1917, induced Meneely to execute the lease to the corporation in which they were the controlling force, both as stockholders and as directors. Under such circumstances, we follow the principle announced in the case of *Rutz* v. *Obear, supra,* and hold that the foregoing facts in effect and of necessity destroy the separate entity of the corporation as to this transaction, and that it is therefore estopped to deny or repudiate their representations and acts. We therefore determine that in the further consideration of this case, the acts and representations of said Devonald and said Scott shall be deemed as the

acts and representations of appellant by which it must be bound.

The lease acquired by it through the instrumentality of said Devonald and Scott must be held to enure to the benefit of appellee under the terms of his lease

2. executed to him by said Devonald and. Scott, in September, 1916, and appellant is estopped from claiming under its lease as against the rights of appellee under his lease. The principle of estoppel that is of controlling force here is set out in the case of *Glendenning* v. *Superior Oil Co.* (1904), 162 Ind. 642, 70 N. E. 976. See also 11 Am. and Eng. Ency. Law (2d ed.) 403. It remains to determine as to appellee's rights under his lease aforesaid.

The complaint in effect avers an unlawful entry and detainer, but the second paragraph of answer under consideration, the averments of which must be taken

3, 4. as true in considering the demurrer thereto, show that plaintiff in reality seeks a. forfeiture which it undertakes to consummate by seeking injunctive relief. This it cannot do. *Lefforge* v. *West* (1851), 2 Ind. 514; 16 Cyc 52; 21 C. J. 62; 1 Pomeroy, Equity (3d ed.) §459.

Appellant contends that appellee had failed to comply with the terms of the lease in that he failed to complete a shaft and to begin mining coal in good faith within the time fixed in the lease, and that the violation of such condition as expressly stipulated, operated to render the lease null and void under its terms. It relies upon the case of *Island Coal Co.* v. *Combs* (1899), 152 Ind. 379, 53 N. E. 452, but the facts in that case are substantially different from the facts in the instant case. It there appears that the lease was executed in the year 1883, with a provision of forfeiture if appellant, lessee, should fail to operate within eighteen months from the date of the lease. Appellant performed no work upon the said leased premises for about seven years, when,

by mistake, it mined about 100 tons of coal from the leased premises, but upon discovering its mistake ordered its employes to cease operations thereon and never thereafter mined any coal from the leased premises.

In the instant case it appears that within a reasonable time after the execution of the lease to appellee he commenced his development work, and as soon as it was discovered that there was coal that could be mined profitably he began his preparation to mine the same.  He expended large sums of money for material and performed much work in the way of constructing the buildings and other structures.  He was much hindered in his preparation by the fact that he was unable to secure certain necessary materials for his work, we may well assume because of industrial conditions then prevailing, but notwithstanding this hindrance, he commenced the sinking of his shaft to the coal in ample time to have completed it had it not been for the wash out which eventually compelled him to abandon the shaft and to sink another.  This was an unforeseen condition and one for which he was in no manner responsible, and the one which eventually prevented him from mining coal at the end of the twelve months within which time he had agreed to commence mining the same.

Placing a construction on his contract that he was required to pay annuities after twelve months, appellee tendered the same to the parties whom he be-
5, 6.    lieved entitled thereto and was at the time of the commencement of this action and thereafter ready and willing to pay the same over to the party entitled to receive the same.  Time was not made the essence of the contract, and in equity, unless it affirmatively appears that it was so regarded by the parties, the court will not so regard it.  13 C. J. 686.  When such is the case equity will not enforce a forfeiture

where the actual damages sustained can be adequately compensated, and in this case the parties themselves by their contract have fixed the compensation for delay by determining the amount that should be paid month by month which was $50.

In the case of *Seymour Water Co.* v. *City of Seymour* (1904), 163 Ind. 120, 70 N. E. 514, it was held that the party who seeks a cancellation of a contract which has been wholly or partially executed by the opposite party must show a necessity for such remedy, and especially must show the lack of a remedy at law. The same principle is announced in the case of *Rembarger* v. *Losch* (1918), 70 Ind. App. 98, 118 N. E. 831, in which case it was held with reference to oil and gas leases that where exploration and development is made in accordance with the terms of the lease, and oil or gas are produced thereby as therein provided, the lessee acquires an interest in such land, and that where such interest has been acquired it will not be forfeited unless it clearly appears that it would be against equity to permit the lessee longer to assert such interest. The principle announced is directly in point with the instant case. That case, written by Batman, J., of the first division of this court is well considered and is an authority of controlling force as to the questions here involved.

Appellee's second paragraph of answer states a defense to appellant's cause of action and the demurrer thereto was properly overruled. The evidence fully sustains the averments of such answer and therefore the court did not err in overruling appellant's motion for a new trial.

The judgment is affirmed.