## OWENS v. WAGGONER

[No. 17,247. Filed June 15, 1944.]

*Beasley & Beasley*, of Linton, attorneys for appellant.

*Paul Haywood*, of Bloomfield, attorney for appellee.

CRUMPACKER, J.—The appellee is now and has been for several years the fee simple owner of 108 acres of land in Clay County, Indiana, under the surface of

which there lies an estimated 60,000 tons of bituminous coal. On the 13th day of May, 1937, he entered into a written lease with the appellant whereby said appellant was to have the use of said land for a period of 10 years for the purpose of mining and removing said coal in a manner known in the business as the stripping process. Under the terms of said lease the appellant agreed to pay the appellee the sum of 12½ cents for each 2,000 pound ton of coal so mined and removed. Settlement and payment on this basis was to be made on the 25th day of each month for the coal mined and removed during the preceding month. The appellant agreed to furnish the appellee with monthly statements of tonnage operations and said appellee was to have access at any reasonable time to weight sheets, tonnage reports, "weigh bills" and other papers kept by the appellant and pertaining to the quantity of coal mined and removed from said land. The appellant further agreed to mine and remove said coal in as thorough a manner as is reasonably practicable in mining operations of the character contemplated by the parties, and it was expressly provided that said lease was executed "upon the express condition that if the royalty herein stipulated shall at any time be in arrears and unpaid for a period of ten (10) days after the same shall become due, or if the Lessee shall fail and neglect to perform and observe each and/or any of the conditions, covenants and terms of this lease on its part to be performed and observed, then and in that event this lease may be forfeited at the option of the Lessors by giving to the Lessee thirty (30) days notice in writing of their intention to cancel or terminate said lease unless said royalty is paid or the violation is corrected within said thirty (30) days."

The appellant went into possession of the land involved imediately after the execution of the above lease and to this day has not mined or removed any coal whatsoever therefrom and consequently has paid the appellee no royalty nor rendered monthly statements of operations. Aside from approximately $100 paid for blue prints and expenses in "looking around," as he terms it, the appellant has expended no money in mining operations or in preparation for working the land under the terms of said lease. A 30 day written declaration of forfeiture and notice to quit the premises for failure to perform the covenants in the lease, on his part to be performed, was served on the appellant by the appellee on the 25th day of July, 1942, and upon the appellant's refusal to so quit this action was brought by the appellee for immediate possession of the real estate involved and damages for unlawfully holding over. Upon issues joined trial was had to the court which entered a general finding for the appellee and rendered judgment for possession and damages in the sum of $1.00. The matter comes here upon an assignment that the court erred in overruling the appellant's motion for a new trial which charges that the decision of the court is not sustained by sufficient evidence and is contrary to law.

On page 23 of the appellant's brief, filed April 11, 1944, under the heading "Memoranda" we find the following statement: "The uncontested facts are as follows: Plaintiff and defendant on May 13, 1937, entered into a lease. Defendant has not worked the same to the present date and gave no statements as to tonnage relative to the mining of coal as no coal was mined, but has expended $100.00 in development work, blue prints and preparation to mine. That there is approximately 60,000 tons of coal on said lease and that it can

be worked in a period of six months; the lease runs until May 13, 1947." This statement is unchallenged by the appellee and we, therefore, assume that it is correct and that the facts therein set out are accepted by both parties. It also seems to be undisputed that when the appellant went into possession of the land in controversy under the terms of said lease there was a considerable quantity of coal from which the over burden had already been removed but which he has made no effort to mine. There is further evidence tending to prove that this uncovered coal deteriorated or wasted because of the appellant's failure to remove or protect it.

The appellant first contends that these facts are the most favorable to the decision that the record discloses, yet they fail to show a breach of any covenant contained in the lease. In support of this contention he insists that, time not being the essence of the contract, he has until May 13, 1947, to mine and remove the coal from the leased premises which, the undisputed evidence shows, can be done in a period of six months and until he begins such operations he owes the appellant no duty to, nor can he, furnish statements of tonnage operations or keep books and records for the appellee's inspection. We are of the opinion that this position is not tenable. The Supreme Court in *Island Coal Co.* v. *Combs* (1899), 152 Ind. 379, 387, 53 N. E. 452, laid down the rule applicable to the situation at bar in the following language: "In leases of mineral lands, of the nature of the one in question, where the lessee agrees to pay to the lessor a royalty or rent, which depends on the amount of coal or other product mined, the lessee thereby, in the absence of any provision to the contrary, impliedly obligates himself to begin the development of the coal,

and the mining thereof, within a reasonable time after the execution of the lease. As to what may be regarded as a reasonable time, however, depends upon the circumstances of the particular case. Where the rent to be paid to the lessor is a royalty measured by so much per ton of the product mined, the authorities affirm that it is not within the option or discretion of the lessee to fail to develop and operate the mines upon the leased premises for an indefinite or unreasonable time. A failure upon the part of the lessee, for an unreasonable length of time, to carry into effect the purposes of such a lease by opening and working the mines underlying the leased premises, will be held to operate as a forfeiture of his rights."

It is urged that the lease involved in the above case contained an express stipulation that mining operations should commence within 18 months after the date of its execution and, therefore, the statement of the rule which we have quoted above is mere *obiter dictum* announced by the court in a discursive argument of the cause. Even should we grant this to be true, nevertheless such dictum is in complete harmony with the rule adhered to almost universally by courts of other jurisdictions and we see no logical reason for us to hold. otherwise. See cases cited in *Island Coal Co.* v. *Combs, supra.* In this connection our attention is directed to the case of *Burnett Coal Mining Co.* v. *Schrepferman* (1921), 77 Ind. App. 45, 133 N. E. 34, in which it is held that where time is not made the essence of a lease of mineral rights and the actual damages sustained can be adequately compensated, equity will not enforce a forfeiture for delay in complying with the terms of the lease. The decision in that case carefully considers the holding in *Island Coal Co.* v. *Combs, supra,* and in no sense does it over-

rule the principle of law announced in the excerpt of the opinion which we have quoted above. In the lease involved in the Burnett Coal Mining Co. case there was a specific provision for the payment of liquidated damages resulting from delay in commencing mining operations and in such a situation the court very properly said that equity will not decree a forfeiture because there was a clear remedy at law which the parties themselves had agreed was adequate. The present case presents no such factual situation but on the contrary clearly falls within the rule laid down in *Island Coal Co.* v. *Combs, supra,* and upon the authority of that case we hold that appellant's failure to begin mining operations within a reasonable time after the execution of the lease involved was such a violation of the terms thereof as will warrant a forfeiture. What constituted unreasonable delay was, of course, a question of fact for the trial court to determine from all circumstances of the case and its decision in that respect cannot be disturbed.

The appellant next contends that this is an action in equity and the burden rests upon the appellee to show that he has no adequate remedy at law and on that issue there is a total lack of evidence.

Such, however, is not the case. This is a suit to enforce a contractual forfeiture by proceedings at law for the recovery of possession of the leased premises together with damages for unlawfully holding over after notice to quit. It is the appellant who sought to invoke equity and the burden rested upon him to show that it would be inequitable to refuse him relief from the forfeiture clause in the lease. For the reasons we have heretofore indicated we are of the opinion that on the undisputed facts the law denies him

such relief. As was said in an early case "Forfeiture for non-development or delay, is essential to private and public interests in relation to the use and alienation of property. In such cases as this equity follows the law. In general equity abhors a forfeiture, but not when it works equity and protects a landowner from laches of a lessee, whose lease is of no value until developed." *Munroe* v. *Armstrong* (1880), 96 Pa. St. 307. See also *Gadbury* v. *Ohio, etc., Gas Co.* (1904), 162 Ind. 9, 67 N. E. 259.

Judgment affirmed.

NOTE.—Reported in 55 N. E. (2d) 335.