Gayle W. **BEGLEY**, Individually and as Personal Representative of the Lucy Belle Weyerbacher Estate, Helen H. Weyerbacher, Kenneth P. Weyerbacher, Gayle W. Wilson, John W. Weyerbacher, Carolyn G. Begley, Helen W. Christian, Diane Harrison and Julie W. Reeder, Plaintiffs,

v.

**PEABODY COAL COMPANY,**
Defendant.

No. EV 92–0105–C H/H.

United States District Court,
S.D. Indiana,
Evansville Division.

Sept. 9, 1997.

George A. Barton, Rasmussen & Barton, Kansas City, MO, George E. Stigger, III, Henderson, KY, for all Plaintiffs.

W. Stanley Walch, Lawrence C. Friedman, Stephen R. Welby, Thompson Coburn, St. Louis, MO, Brent R. Weil, Ron A. Hobgood, Van T. Willis, Kightlinger & Gray, Evansville, ID, for Defendant.

*ENTRY ON SUMMARY JUDGMENT*

HAMILTON, District Judge.

Plaintiffs are the lessors under a coal mining lease executed in 1967. In Count II of their third amended complaint, plaintiffs seek a declaration that the lease has terminated because the lessee, defendant Peabody Coal

Company, did not actively mine the leased property for ten years between 1986 and 1996. On July 1, 1997, the court denied plaintiffs' motion for summary judgment on the claim, explained why it believed defendant Peabody was probably entitled to summary judgment on the claim, and allowed the parties an opportunity to respond. See Entry on Pending Motions, Docket No. 188. As explained below, after considering the parties' submissions and additional authorities cited, the court concludes that Peabody is entitled to summary judgment on the lease termination issue.

### Summary Judgment Standard

Summary judgment should be granted when the pleadings and the supplemental material submitted to the court present no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to find in favor of the non-moving party on the particular issue. *E.g., Russell v. Acme–Evans Co.,* 51 F.3d 64, 70 (7th Cir.1995).

### Undisputed Facts

The central undisputed facts relevant to plaintiffs' lease termination claim are the terms of the coal mining lease agreement, and the facts that defendant Peabody actively mined the leased premises from approximately 1967 to 1986, that Peabody paid substantial advance and earned royalties to plaintiffs pursuant to the lease, and that substantial amounts of economically recoverable coal remain on the leased premises.

On November 2, 1967, the plaintiffs or their predecessors in interest, as lessors, and the Sentry Royalty Company, as lessee, executed a "Coal Mining Lease" for certain lands located in Warrick County, Indiana Peabody Coal Company later assumed Sentry Royalty's rights and obligations under the lease agreement. The "Subject Lands" covered by the lease agreement consist of about thirty separate parcels of land in northeast Warrick County. Each of these thirty parcels borders on other parcels covered by the lease and/or land owned by Peabody. Tilley Dep. at 12, 30, 57, Docket No. 181, Ex. B. The lease requires Peabody to make payments of advance royalties and earned royalties to plaintiffs. The lease allows Peabody to mine the property:

> The Lessors hereby grant the Lessee the right to mine the Subject Lands by the strip mining method or any other method, without claim or liability for damage to the Subject Lands or improvements thereon, either alone or in conjunction with adjoining lands, and to remove all Millersburg Seam coal from the Subject Lands, together with the impurities inherent therein or adjacent thereto, no matter how heavy the overburden; provided, always, that the Lessee agrees in mining any specific site on the Subject Lands, it will, to the extent that the quantity, quality and position of the coal in such site makes it economically recoverable, mine by the strip mining method all strippable coal. The term "strippable coal," as used herein, means all Millersburg Seam Coal which lies beneath an overburden of not to exceed eighty (80) feet and which is so situated that it can be economically mined by the strip mining method without Lessee having to remove overburden in excess of eighty (80) feet over adjacent coal. It is the intent hereof that the Lessee shall not be obligated, but merely permitted, to mine by the strip mining method any coal which lies beneath an overburden of more than eighty (80) feet. It is further understood and agreed that Lessee shall be under no obligation to mine the Millersburg coal under the Subject Lands where such coal is inferior in quality or where the thickness of the seam is abnormally low so as to make the mining of such coal uneconomical.

Lease Agreement at 7–8. The term of the lease is defined as follows:

> This Lease is for a term or period of twenty (20) years from the date hereof and until all of the economically recoverable coal contained in said Subject Lands or in any adjoining premises at any time owned, operated or controlled by Lessee shall be recovered, whichever period is the longer,

but in no event to exceed forty (40) years from date (hereinafter referred to as the "Term").

Lease Agreement at 2. The lease also provided for both advance royalties and earned royalties. The advance royalties consisted of twenty annual payments of $27,360, totalling $547,200, from 1967 to 1986. The earned royalties were to be calculated according to a detailed formula in the lease. The lease also provided that advance royalties paid by Peabody would be credited against earned royalties. It is undisputed that Peabody mined coal from various sites on plaintiffs' property between November 1967 and October 1986 and paid royalties on that coal.[1]

### Discussion

Count II of plaintiffs' third amended complaint seeks a declaratory judgment that the 1967 lease agreement executed by the parties or their predecessors has terminated as a matter of law. Plaintiffs argue that Indiana law recognizes an implied duty to diligently mine coal in coal mining leases, and that Peabody has not fulfilled its implied obligation to diligently mine coal because Peabody: (1) did not conduct any mining operations on the leased premises for more than ten years; (2) did not pay any royalties to the plaintiffs for more than ten years; and (3) did not conduct any mining operations on any adjoining premises for more than ten years. Plaintiffs conclude, therefore, that the 1967 lease agreement has terminated by operation of law.

Peabody argues that the lease has not terminated because the lease does not impose any affirmative obligation to mine coal continuously as a condition of continuing the term of the lease. Peabody argues that the term clause provides that the lease continues until November 2, 2007, as long as there is recoverable coal on the leased premises. Peabody also argues that even if the lease could terminate by operation of law due to a period of non-use, the Indiana Dormant Mineral Interests Act, Indiana Code § 32–5–11–

1, provides that Peabody's interest must be unused for at least twenty years before the lease can be deemed terminated by operation of law.

### I. Implied Duty of Diligent Mining

The 1967 lease agreement authorizes Peabody to mine the leased premises, but it does not explicitly impose any affirmative obligation on Peabody to mine all recoverable coal on the leased premises. The lease agreement also does not establish any timetable for mining coal. In addition, the term clause of the lease does not require active mining as a precondition to extending the term past the initial twenty years. The term clause reads:

> This Lease is for a term or period of twenty (20) years from the date hereof and until all of the economically recoverable coal contained in said Subject Lands or in any adjoining premises at any time owned, operated or controlled by Lessee shall be recovered, whichever period is the longer, but in no event to exceed forty (40) years from date (hereinafter referred to as the "Term").

Lease Agreement at 2. This clause provides that the lease will continue in effect as long as economically recoverable coal remains on the leased premises, but that the lease will have a minimum duration of twenty years and a maximum duration of forty years.

Despite the absence of any express language in the written agreement supporting their position, plaintiffs argue that the court should imply in this lease agreement a requirement that Peabody mine the leased premises within a "reasonable" time or suffer termination of the lease. In support of this argument, plaintiffs cite cases from Indiana and other jurisdictions in which courts have implied in mineral leases a requirement that the lessee either mine (or drill upon) the premises within a "reasonable" time or suffer termination of the lease, especially after the primary term has expired. Plaintiffs con-

---

1. In a separate count, plaintiffs have asserted that Peabody underpaid earned royalties because certain taxes and fees were not included in the average invoice sale price for the coal, which is a key term of the earned royalty formula. Judge Gene E. Brooks granted plaintiffs' motion for summary judgment as to liability on that count, but the parties' disagreement on that issue does not affect the lease termination claim at issue here.

tend that Peabody's ten year hiatus in mining activities is unreasonable as a matter of law.

Courts in many jurisdictions have found implied in mining leases a requirement that the lessee actually mine the property with reasonable diligence. They have done so in order to fill gaps left by the parties in their leases and in order to avoid the presumably unintended effect of having leases in effect indefinitely, with the property under the control of the lessee while it produces no royalty income for the lessor. The Eighth Circuit explained this point long ago in *Crain v. Pure Oil Co.*, 25 F.2d 824 (8th Cir.1928), where the lessee argued for a construction of the document under which the lessors

> would receive $1 for the mineral interest and no other benefit, and grantees [lessees] could hold the mineral rights indefinitely and never make any effort to discover oil or gas. Such construction is unreasonable, unjust, unequitable, and unconscionable. Reasonable men would not enter into any such contract, and certainly it was not the intention of the parties that grantees could indefinitely tie up the mineral rights in this land, and that any benefit to the [lessors] should be at the option of the [lessee].

25 F.2d at 829. That reasoning and the principal line of cases cited by plaintiffs do not apply to this situation. The lease in this case provided for substantial advance royalties and contained an explicit maximum term. The cases relied upon by plaintiffs dealt with leases that had no time limits for the secondary terms. Most of the cases also involved leases that plainly required production (and continued royalties) as a condition of extending the terms of the leases. It was the lack of *any* definite term that persuaded courts to imply the obligation for the lessee to mine within a reasonable amount of time. This approach avoids construction of a lease so that it extends indefinitely without minerals being mined or royalties being paid to the lessor.

For example, plaintiffs rely most heavily on *Indiana Natural Gas & Oil Co. v. Granger*, 33 Ind.App. 559, 70 N.E. 395 (1904). In that case, the lease provided "for the term of twelve years *and so long thereafter as* petroleum or mineral substances can be produced in paying quantities, or the payments hereinafter provided for are made according to the terms and conditions attaching thereto." *Id.*, 70 N.E. at 396 (emphasis added). The lease also required the lessee to commence drilling or mining within one year of execution of the lease and provided that the lessee would make annual payments to lessor until mining operations were commenced and a well completed. *Id.* In trying to give effect to the intentions of the parties, the court rejected an interpretation that would have given the lessee, in effect, an indefinite option either to drill a well or to pay a mere $20 per year. *Id.* at 397. To avoid the indefinite term, the court held that the lessee's failure to develop the property within the primary term caused the lease to terminate.

Another case cited by plaintiffs interpreted a term clause stating that "this lease shall remain in force for a term of one year from this date *and as long thereafter as* oil, gas, ... is *produced* from said leased premises or *operations for drilling are continued....*" *Citizens By–Products Coal Co. v. Arthalony*, 170 Ind.App. 1, 351 N.E.2d 57, 58 (1976) (emphasis added). The court determined that the lease had "a one year life, in the absence of production." *Id.*, 351 N.E.2d at 60. The other cases relied upon by plaintiffs all dealt with leases containing similar language indicating that continuation of the lease beyond the initial term would be for an indefinite term but would be contingent upon actual mineral *production* by the lessee. See *Imperial Colliery Co. v. Oxy USA Inc.*, 912 F.2d 696, 699 (4th Cir.1990) (primary term of ten years "and as long thereafter as oil or gas is produced therefrom and royalties paid by the Lessee"); see also *Jolynne Corp. v. Michels*, 191 W.Va. 406, 446 S.E.2d 494, 497 (1994) (lease's initial term was for two years and then "as long thereafter as the said land is operated by the Lessee in the search for or production of oil or gas"); *Lough v. Coal Oil, Inc.* 217 Cal.App.3d 1518, 1522, 266 Cal.Rptr. 611 (Cal.Ct.App.1990) (term of twenty years and "so long thereafter as ... produced therefrom"); *Vaughn v. Hearrell*, 347 S.W.2d 542, 543 (Ky.1961) (lease "for a term of six

months from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee").

The implied obligation to mine within a "reasonable" period or to continue operations without unreasonable interruptions is a rule developed by courts to fill in gaps the parties have left in their written contracts that would otherwise leave the lessor with no benefit from the transaction. The parties' 1967 lease agreement in this case has no such gap, and such a judicial construction of an implied condition is not warranted. The parties agreed to a specific end date for the lease. The lease provides that the lease will continue for a minimum of twenty years and a maximum of forty years. Past the twenty year mark in November 1987, the lease provides for continuation until all economically recoverable coal on the leased premises or adjoining premises owned, operated, or controlled by Peabody is recovered.

In response to this court's entry of July 1, 1997, plaintiffs have cited two additional Indiana court decisions. Plaintiffs now rely on *Owens v. Waggoner,* 115 Ind.App. 43, 55 N.E.2d 335 (1944), and *Island Coal Co. v. Combs,* 152 Ind. 379, 53 N.E. 452 (1899). In *Island Coal,* the parties signed a coal mining lease with a term of 99 years. The lease contained a forfeiture clause authorizing the lessor to resume control of the land if the lessee failed for a period of eighteen months to "commence the necessary work for developing the coal interest" covered in the lease. 53 N.E. at 453. The Supreme Court of Indiana stated:

> In leases of mineral lands, of the nature of the one in question, where the lessee agrees to pay to the lessor a royalty or rent, which depends on the amount of coal or other product mined, the lessee thereby, in the absence of any provision to the contrary, impliedly obligates himself to begin the development of the coal, and the mining thereof, within a reasonable time after the execution of the lease.... Where the rent to be paid to the lessor is a royalty measured by so much per ton on the product mined, the authorities affirm that it is not within the option or discretion of the lessee to fail to develop and operate the mines upon the leased premises for an indefinite or unreasonable time. A failure on the part of the lessee, for an unreasonable length of time, to carry into effect the purposes of such a lease by opening and working the mines underlying the leased premises, will be held to operate as a forfeiture of his rights.

53 N.E. at 455. Strictly speaking this statement is *obiter dicta* because the court based its decision on an explicit clause in the lease permitting termination after an eighteen month failure to develop the lease. This court assumes that the statement remains an accurate statement of Indiana law. The salient points here are that the implied obligation of diligent mining is implied only "in the absence of any provision [in the lease] to the contrary," *id.,* and only when it is necessary to keep the lease from becoming an open-ended burden on the lessor's property in the absence of substantial income from the property. In contrast to the situation in *Island Coal,* the lease in this case provided both an explicit limit to its term and provided the lessees with substantial income in the form of advance royalties through the first twenty years of the lease. There is no equitable need or basis for this court to rewrite these parties' lease by finding an implied obligation to mine continuously or diligently.

At first glance *Owens v. Waggoner* lends plaintiffs more support. In that case the parties executed a coal mining lease with a durational term often years. The lease required the lessee to pay royalties on a monthly basis to the lessor for each ton of coal mined and removed. The lease included a forfeiture clause that authorized the lessor to terminate the lease upon thirty days notice in the event that the lessee failed to perform and observe any of the conditions, terms, or covenants of the lease. The lessee took possession of the land but never mined or removed coal from the premises, and never paid royalties to the lessor. *Owens,* 55 N.E.2d at 335–36. Also, the lessee had allowed a considerable quantity of exposed coal on the property to deteriorate because he failed to remove or protect it. The appellate court followed the *dicta* from *Island Coal* and held that the lessee's "failure to begin

mining operations within a reasonable time after the execution of the lease involved was such a violation of the terms thereof as will warrant a forfeiture." *Id.,* 55 N.E.2d at 337. *Owens* provides plaintiffs with more support than the *dicta* in Island Coal because the lease in *Owens* was not open-ended. It had a term of only ten years. However, the equitable roots of the decision in *Owens* are clear in the opinion, see *id.* at 336–37, and the lessee in that case apparently had not received a penny from the lessee during the seven years after the lease took effect. The equity of a forfeiture of the lease under those circumstances is both understandable and consistent with *Island Coal* and the decisions in many other jurisdictions. That equitable need to declare the lease terminated is not present in this case, where the lessee agreed to pay advance royalties of more than half a million dollars in the early stages of the lease.

Although the implied obligation of diligent mining has been widely recognized by courts, it is a narrow principle, and it does not apply when the parties to the lease provide for some substantial amount of advance royalties or other assurance of income to the lessor in the event the lessee does not mine at all. But where, as here, the lease provides for substantial income for the lessor in the absence of any mining, there is no compelling equitable need for an implied obligation of diligent mining, and courts do not imply one. In Indiana this is evident in *Burnett Coal Mining Co. v. Schrepferman,* 77 Ind.App. 45, 133 N.E. 34 (1921), a case distinguished in *Owens.* In *Burnett Coal Mining,* the lessee began development work but failed to comply with an explicit twelve month deadline in the lease for the start of mining operations. The lease also provided for advance royalties if the twelve month deadline were missed. After the deadline was missed, the lessor tried to have the lease forfeited based on the principles of *Island Coal* and the implied obligation of diligent mining. The appellate court held that the provision for advance royalties defeated the forfeiture claim. The advance royalties provided adequate compensation for the absence or delay of earned royalties, and showed that time was not of the essence in the lease. 133 N.E. at 37–38.

The Supreme Court of Pennsylvania explained the point in more detail in *Hutchison v. Sunbeam Coal Corp.,* 513 Pa. 192, 519 A.2d 385 (1986). The coal lease in that case provided for payment of minimum advance royalties for at least three years if the lessee chose not to actively mine the property. No mining was done for three years, but the advance royalties were paid. The trial court had found an implied duty to mine. The supreme court rejected that reasoning:

> In coal mining leases, where the consideration for the privilege of removing the mineral is a royalty on the amount extracted, it is common for the parties to stipulate that a minimum advance royalty will be paid to the landowner if no mining is done. See generally *Lacoe v. Lehigh Valley Coal Co.,* 290 Pa. 495, 139 A. 140 (1927). In *Hummel v. McFadden,* 395 Pa. 543, 150 A.2d 856 (1956 [1959]), this Court implied a duty to mine in a lease agreement which did not provide for minimum royalties in the absence of mining. There the implied covenant imposed upon the mining company a duty to commence operations in order to provide the landowner some return on his agreement. Our holding in *Hummel* leaves the contracting parties free to bargain for a provision addressing the amount and type of consideration to be paid in lieu of forfeiture should the mining company fail to commence mining operations. Pennsylvania courts have reasoned that minimum advance royalties are in the nature of liquidated damages for the lessee's failure to mine. [citations omitted] Such reasoning recognizes minimum advance royalties as the consideration flowing from the coal company to the landowner in lieu of the tonnage royalties which would be paid if mining operations were undertaken. *Implying a duty to mine in the face of a minimum advance royalty clause ignores the terms agreed to by the contracting parties.*

519 A.2d at 388 (emphasis added).

As the Pennsylvania court observed in *Hutchison,* courts in many jurisdictions have taken this approach and rejected any implied duty to mine where leases provide for ad-

vance royalties to ensure that the lessor obtains some material gain from the lease. For example, in a case applying Arkansas law, the Eighth Circuit quoted approvingly from the opinion of then District Judge Henley:

It is well settled in Arkansas that where the actual, moving consideration for a mining lease or for an oil and gas lease is the expectation of royalties on minerals to be extracted from the leased premises, and where the lease is silent as to development and operation, the lessee is held to be bound by implied covenant to develop and operate the premises with reasonable diligence; a failure on the part of the lessee to do so is ground for forfeiture.

Where, as here, however, the contracting parties have dealt specifically with the question of development and operation, their agreement governs, and "there can be no reason or implication."

*Inman v. Milwhite*, 402 F.2d 122, 124 (8th Cir.1968) (citations omitted). Accord. *Higginbottom v. Thiele Kaolin Co.*, 251 Ga. 148, 304 S.E.2d 365, 367–68 (1983) (no implied duty to mine where lease provided for minimum annual rental and 50–year lease gave lessee discretion as to whether and when it should mine); *Olson v. Pedersen*, 194 Neb. 159, 231 N.W.2d 310, 315 (1975) (implied obligation to mine is eliminated because lease provided for payment of minimum annual royalty); *Tennessee Valley Kaolin Corp. v. Perry*, 526 S.W.2d 488, 491 (Tenn.App.1974) (implied duty to mine arises only where that obligation is the sole or substantial consideration for granting the lease); *Vitro Minerals Corp. v. Shoni Uranium Corp.*, 386 P.2d 938, 942–43 (Wyo.1963) ("where the minimum royalties or annual rentals are reasonably substantial in relation to the expected return from the property, they represent in effect

an agreed compensation to the lessor for the lessee's failure to observe and perform the duty, express or implied, to implement reasonable production"); see also *Johns Hopkins Hospital v. Peabody Coal Co.*, 920 F.Supp. 738, 749–50 (W.D.Ky.1996) (payment and acceptance of substantial advance or minimum royalties defeats implied duty to mine under Kentucky law).

It is true that this construction of the lease means that these plaintiffs could go for many years without receiving royalty payments. However, this result is simply part of the bargain struck by the parties. The parties chose to structure the transaction so that the plaintiffs or their predecessors would receive at least $547,200 over the first twenty years of the lease, regardless of the amount of production or the royalties paid per ton of production. The lease made clear that Peabody could not terminate the lease unless and until it had paid all sums due to plaintiffs. Lease Agreement at 15, Article XVII. Where the parties chose to structure their contract and schedule the payments in this way, there is no equitable basis for the courts to restructure the deal and imply a duty to maintain a continuous flow of royalties to the plaintiffs. See *Frierson v. International Agricultural Corp.*, 24 Tenn.App. 616, 148 S.W.2d 27, 34–35 (1940) (initial lump sum payment of $35,000 was sufficient to support 30–year mining lease without obligating lessee to mine the property or take any other action).[2]

It is undisputed that economically recoverable coal remains on the leased premises. Plaintiffs' second amended complaint alleges that "there is still economically recoverable coal located within the Leased Premises." Docket No. 74, Ex. A, ¶ 31. Plaintiffs' third amended complaint alleges that "Peabody

2. The economics of surface coal mining also weigh against implying any obligation to maintain a continuous stream of royalties in this case. Unlike oil and gas leases where, once production begins, a well can often produce a relatively steady stream of royalties for a considerable length of time, surface coal mining requires a mining company to assemble a large tract of land to make the mining economically feasible. The mining equipment then moves slowly through the entire tract, but moves through each parcel only once. Thus, unlike oil or gas production, surface coal mining of each parcel is generally a one-time event. As a result, a surface mining operation needs great flexibility in timing the mining of any particular parcel, and neither lessor nor lessee can expect the mining of a particular parcel to produce a continuous stream of royalties. The Indiana General Assembly recognized this difference when it enacted legislation providing for oil and gas leases (but not coal mining leases) to terminate if royalty payments and production stop for just one year. See Ind. Code § 32–5–8–1.

currently has plans to resume mining on the Leased Premises sometime within the next six months." Docket No. 163, Ex. 1, ¶ 14. Deposition testimony from a Peabody mine superintendent confirms both the presence of economically recoverable coal on the leased premises and Peabody's intention to resume mining activities on the premises in 1997. Tilley Dep. at 52, Docket No. 181, Ex. B. Because economically recoverable coal remains on the leased premises and the term of the lease has not yet expired, the undisputed facts show that the 1967 lease agreement has not terminated.

## II. Dormant Mineral Interest Act

There is no basis for termination of the parties' 1967 lease based on any breach of any express terms by Peabody, and the court has just explained why the common law does not imply in this lease a duty to continue mining under this lease. However, even if the common law would impose such an implied duty of mining in this lease, Peabody has raised an alternative and independent basis for summary judgment in its favor. Plaintiffs have already indicated their intention to appeal a ruling in Peabody's favor on the lease termination issue. In the event the Court of Appeals disagrees with this court's ruling on the implied obligation of diligent mining, a ruling by this court at this time on the alternative theory may advance the resolution of this lawsuit. Cf. *Allen v. Park Nat'l Bank & Trust of Chicago*, 116 F.3d 284, 287 (7th Cir.1997) (after bench trial, it would have been helpful if district court had made findings of fact on alternative theory in case of reversal on district court's chosen theory).

Peabody contends that even if the common law would impose on it an implied obligation of diligent mining, the Indiana Dormant Mineral Interest Act limits the power of courts, at least in the absence of explicit contract terms, to determine whether a failure to use an interest in minerals is sufficiently "unreasonable" as to cause a lapse or forfeiture of the interest. See Ind.Code § 32–5–11–1. The Act provides that a mineral interest can lapse if it is unused for a period of twenty years.

▪ Plaintiffs argue that the Act does not apply to lessees or to their implied duties to mine. The language of the Act applies to a lessee's interest in minerals under a mining lease. The term "mineral interest" is defined broadly to mean "the interest which is created by an instrument transferring, either by grant, assignment, or reservation, or otherwise an interest, of any kind, in coal, oil and gas, and other minerals." Ind.Code § 32–5–11–2 (emphasis added). The statutory provision setting forth the uses sufficient to defeat lapse of an interest makes clear that a lessee's interest is covered:

> A mineral interest shall be deemed to be used when there are any minerals produced thereunder or when operations are being conducted thereon for injection, withdrawal, storage or disposal of water, gas or other fluid substances, *or when rentals or royalties are being paid by the owner thereof for the purpose of delaying or enjoying the use or exercise of such rights,* ... or when taxes are paid on such mineral interest by the owner thereof. Any use pursuant to or authorized by the instrument creating such mineral interest shall be effective to continue in force all rights granted by such instrument.

Ind.Code § 32–5–11–3 (emphasis added). The phrase "when rentals or royalties are being paid by the owner thereof for the purpose of delaying or enjoying the use or exercise of such rights" shows that the Act applies to a lessee's interest. The only "owner thereof" who could pay rentals or royalties so as to "use" the interest is the lessee, like Peabody in this case. See *Kirby v. Ashland Oil, Inc.*, 463 N.E.2d 1127, 1129–30 & n. 3 (Ind.App.1984) (owner of mineral interest does not "use" interest by merely granting a lease to another person to mine or drill).

▪ The question here is how the Act affects courts' decisions about whether a particular lease should be deemed to contain an implied duty to mine. The Act provides one mechanism for declaring that certain leasehold interests have lapsed after twenty years of no use, but it does not provide the *exclusive* means for terminating such a leasehold interest for lack of use. In other words, the Act supplements, but does not displace, the

common law rules developed for the termination of leasehold interests in minerals. The court bases this conclusion on three considerations.

 First, of course, the language of the Act does not expressly conflict with the common law rules, nor does that language reflect any intention to provide the sole means for termination of leasehold interests in minerals. Indiana recognizes and follows the principle that statutes in derogation of the common law are construed strictly, so that where a statute does change the common law, the courts will presume that the legislature did not intend to make changes beyond what it declared in express terms or by unmistakable implication. *E.g., Drake v. Mitchell Community Schools,* 649 N.E.2d 1027, 1029–30 (Ind.1995); *Tittle v. Mahan,* 582 N.E.2d 796, 800 (Ind.1991). Second, where the Indiana legislature has intended to impose a bright-line rule for termination of leasehold interests in minerals, it has done so specifically, in Ind.Code § 32–5–8–1. That statute provides for termination of oil and gas leases if both royalty payments and production stop for just one year. The legislature has not taken such specific action with respect to coal mining leases. Third, the Act addresses a set of problems different from those addressed by the common law implied obligation of diligent mining. The Act permits a lessee who has not produced any minerals or paid any royalties or rents for twenty years to preserve its interest merely by filing a "statement of claim" with the Recorder of Deeds in the county where the property is located. Ind.Code § 32–5–11–4. Where a lessor has received no royalty payments at all and the lessee shows no signs of interest in mining in the near future, having the lessee merely record a statement of claim does the lessor utterly no practical good. Recording the statement of claim would not serve in any way the purposes of the implied obligation of diligent mining that has devel-oped under the common law. For these reasons, the court concludes that the Indiana courts would not interpret the Dormant Mineral Interest Act to be the exclusive means by which an unused leasehold interest in minerals may lapse. Peabody is not entitled to summary judgment based on that Act.

### Conclusion

 The undisputed facts show that there is no equitable basis for implying an obligation to mine, the breach of which could support termination of the parties' lease. The court therefore grants summary judgment to defendant Peabody Coal Company on Count II of plaintiffs' third amended complaint. Judgment will not be entered at this time because the damages element of Count I from plaintiffs' third amended complaint has not yet been resolved.[3] The court will keep under advisement defendant's motion for leave to dismiss its counterclaim without prejudice until after response materials have been filed by plaintiffs. Defendant need not answer plaintiffs' third amended complaint.

So ordered.

---

3. Without filing a motion seeking such an order, plaintiffs have suggested that this court should certify the order granting summary judgment to defendant for immediate appeal. See 28 U.S.C. § 1292(b). Defendant has reported to the court that the parties have reached agreement on a stipulation as to the amount of plaintiffs' damages under Count I, suggesting that a final judg-ment as to all counts from plaintiffs' third amended complaint may be entered in the relatively near future. Defendant has also moved to voluntarily dismiss its counterclaim. In light of these circumstances, an order certifying the lease termination issue for interlocutory appeal would not materially advance the ultimate termination of the litigation. See 28 U.S.C. § 1292(b).