J. J. FAGAN & CO. v. BURNS.

1. MINES AND MINERALS—OIL AND GAS LEASES—CONSTRUCTION.
    In construing oil and gas lease, it should be read not only according to its words, but in connection with purpose of its clauses.

2. SAME—REPUGNANCY BETWEEN DIFFERENT CLAUSES RESOLVED IN FAVOR OF FIRST.
    The rule that repugnancy between different clauses of deed or lease is resolved in favor of the first has been adopted by decisions of Supreme Court.

---

As to effect of provision for extension of time of lease so long as oil is produced, see annotation in 43 L. R. A. (N. S.) 848.

3. Same—Term Clause Dominates Period For Which Lease Runs.
    By great weight of authority, term clause in oil and gas lease
        dominates period for which lease shall run, so that, unless
        it is properly modified by other provisions, all rights of lessee
        cease at expiration of time fixed in term clause, except in
        contingency that at expiration of such time lessee is actually
        producing oil and gas on premises.

4. Same—Lease Ends on Expiration of Term Fixed Unless Ex-
    tended by Production.
    At expiration of time fixed in term clause of oil and gas lease,
        if there is no production to extend it, lease ends, not by
        forfeiture, but by its own terms.

5. Same—Purpose of Development Clause Was to Escape Rule
    that Development Must Begin Within Reasonable Time.
    Primary purpose of development clause in oil and gas leases
        was to escape rule that drilling must begin within reasonable
        time, and it is not necessary to construe said clause as extend-
        ing fixed time in term clause in order to effectuate such
        purpose.

6. Same—Condition Subsequent—Forfeiture.
    Provision in oil and gas lease that operations should be com-
        menced within year and continue with diligence to ascertain-
        ment of oil or gas in paying quantities is in nature of con-
        dition subsequent, for breach of which forfeiture was provided,
        and does not purport to modify term clause.

7. Same—Lease Construed for Benefit of Lessor.
    In view of rule that oil and gas leases are to be construed
        for benefit of lessor and against lessee, condition subsequent
        providing for forfeiture in case of breach should not be
        construed as granting larger estate than already granted in
        term clause.

8. Same—Period Fixed by Term Clause Not Extended by Am-
    biguous Language in Development Clause.
    Term clause in oil and gas lease known as ''Producers 88''
        dominates time during which lessee may operate without pro-
        duction, and said fixed term is not extended by mere
        commencement of well nor by indirect, ambiguous, and nega-
        tive language in development clause, but it may, and must,
        if at all, be extended by direct and affirmative provision
        therefor.

Appeal from Muskegon; Vanderwerp (John), J. Submitted June 5, 1929. (Docket No. 53, Calendar No. 34,397.) Decided September 4, 1929.

Bill by J. J. Fagan & Company, a Michigan corporation, against Minnie L. Burns for construction of an oil and gas lease. From decree for plaintiff, defendant appeals. Reversed.

*Joseph T. Riley* and *Cross, Foote & Sessions,* for plaintiff.

*George H. Cross,* for defendant.

Fead, J. This case involves construction of an oil and gas lease, and marks the introduction into this court of what, from the experience in other States, bids fair to be a prolific and not entirely happy subject of legal inquiry.

The lease was for one year from December 17, 1927. It granted, demised, leased, and let certain premises to plaintiff for the purpose of mining and operating for oil and gas, laying pipe lines, and building tanks, towers, stations, and structures thereon to produce, save, and take care of the products. Plaintiff began no operations on the premises until December 15, 1928. The question is whether, having commenced operations within the year, plaintiff had the right to complete the well after the end of the year.

The issue rests upon the construction, and reconcilement or dominance, of the term and development clauses of the lease. The instrument was on printed form and was originally filled in as a five-year lease, but on defendant's request it was changed to one year. To indicate the changes we insert the figure

"5" where that number appeared in the original draft. With these insertions, the term clause reads:

"It is agreed that this lease shall remain in force for a term of one (5) year from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee."

The pertinent part of the development clause is:

"4th. There is expressly granted to the said lessee the right at any time before one year after this date to begin operations for drilling a well for oil or gas on said premises, and also the right to extensions of time in which to begin such operations for successive periods of twelve months from and after December, 1928, on condition that the said lessee shall on or before the first day of each such respective twelve months' period, pay to the lessor or deposit to her credit in the Union National Bank of Muskegon, Michigan (which shall continue as the depository regardless of changes in the ownership of said land) the sum of one dollar ($1.00) per acre, provided that if such payment shall not be made within ten days after the first day of each such respective twelve months' period, then and on such default this lease shall wholly determine; and provided further that these successive periods in which the right may be acquired to begin the operation of drilling a well in search for oil or gas shall not exceed in the aggregate one (5) year from this date, and if such operations shall not be begun on or before the expiration of said one (5) year from December 17, 1927, and continue with due diligence to a reasonable determination of the presence of oil or gas in paying quantities, then this lease shall wholly determine."

The form of lease is known as "Producers 88." Producers Oil Company forms are so well known

and commonly used that some of them are shown in the textbooks. Summers, Oil and Gas (1927), p. 751; Mills & Willingham, Law of Oil and Gas (1926), pp. 601,.604. As demonstrated by these authorities and Thornton's Law of Oil and Gas (1925) (4th Ed.), the lease forms in common use are more the result of evolution than of initial drafting. In the early days many leases were for long terms, on nominal consideration, contained no requirement of development and followed the forms of real estate or mining leases. Probably the first important general change came because the courts read into the leases an implied covenant to develop within a reasonable time. Summers, Oil and Gas (1927), p. 398; Mills & Willingham, Law of Oil and Gas (1926), pp. 151, 152. This led to designation in the leases of specific time to develop. As other controversies arose and came before the courts, the lease forms changed from time to time to meet the decisions. The evolution is entertainingly and instructively set out in the above textbooks. It is sufficient for our purpose to appreciate the fact of such evolution, and that the lease at bar is not an isolated or private agreement, drafted by uninformed neighbors to roughly express their understanding, but is a technical contract, reflecting the development and present status of the law of oil and gas, as far as it may be said to have a status in view of the bewildering conflict in reasoning and ruling. The lease should be read not only according to its words, but in connection with the purpose of its clauses.

No other lease just like this one seems to have been construed by the courts. Upon other forms, *Perkins* v. *Sanders,* 109 Kan. 372 (198 Pac. 954), and *Cooke* v. *Gulf Refining Co.,* 127 La. 591 (53 South. 874), sustain defendant's contention that the term

clause dominates the time, and that the expiration date therein stated is not extended by a development clause which permits commencement of a well at any time within the fixed term.  On the other hand, a majority of the court, in a case closely in point, *Lester* v. *Mid-South Oil Co.*, 296 Fed. (C. C. A.) 661, has held to the contrary.  The latter case involved a Kentucky lease for five years, which provided for rentals for deferring commencement of operations for successive periods during the term.  The court held the term and development clauses inconsistent, and that the latter modified the former, so that a well commenced on the last day of the fixed term could be completed after its expiration.  In reaching its conclusion, the court pointed out that the development clause was entitled to "additional consideration" because it was later in the instrument than the term clause.  This reasoning is in conflict with the decisions of this court, which give pre-eminence to the first of repugnant clauses.  *Putnam* v. *Railroad Co.*, 174 Mich. 246; *Mullreed* v. *Thumb*, 116 Mich. 440; 35 C. J. p. 1179.

By the great weight of authority, the term clause, which is the habendum clause, dominates the period for which the lease shall run, so that, unless it is properly modified by other provisions, all rights of the lessee cease at the expiration of the fixed time stated in the term clause, except in the one contingency that at the expiration of such time the lessee is actually producing oil and gas on the premises.  A late start or miscalculation of difficulties or time does not excuse failure to produce.  If allowance be made for different conceptions of "production," the rule seems to be sustained by practically unanimous judicial opinion.  Summers, Oil and Gas (1927), pp. 292, 294; Mills & Willingham, Law of

Oil and Gas (1926), p. 118; Thornton's Law of Oil and Gas, § 142; *Guffey* v. *Smith*, 237 U. S. 101 (35 Sup. Ct. 526); *Union Gas & Oil Co.* v. *Adkins*, 278 Fed. (C. C. A.) 854; *Brown* v. *Fowler*, 65 Ohio St. 507 (63 N. E. 76). At the expiration of the fixed time, if there is no production to extend it, the lease ends, not by forfeiture but by its own terms. This distinction has sometimes been lost sight of by courts, with the result of unnecessary conflict. The unanimity of opinion upon the effect of the term clause among courts which are hopelessly divided on nearly all other phases of the oil and gas law is a strong inducement to sustain its dominating character, in the interest of certainty and uniformity of construction and security of rights.

The question is whether the development clause operates to modify the term clause so as to extend the fixed time without production of oil or gas. The primary purpose of the development clause was to escape the rule that drilling must begin within a reasonable time. There was no necessity for the specific grant to the lessee of the right to begin operations at any time within a year. It had that right by virtue of the original grant. The object was to abrogate the implied duty of development within a reasonable time by an express optional agreement for a definite time. Mills & Willingham, Law of Oil and Gas (1926), p. 153. It is not necessary to construe the clause as extending the fixed term in order to effectuate such purpose.

The whole clause is listed in the lease as a covenant and agreement of the lessee. The controversial part, the provision for commencement within a year and diligent prosecution of operations to the ascertainment of oil or gas in paying quantities, is in the nature of a condition subsequent (Mills & Willing-

ham, Law of Oil and Gas [1926], pp. 125, 126;
*Brown* v. *Fowler, supra*), for breach of which for-
feiture may be had, the lease shall "wholly deter-
mine." It does not purport in words to modify the
term clause. It purports merely to designate con-
ditions under which the estate created by the grant-
ing clause and held under the habendum clause shall
determine. To give it the effect of extending the
fixed term would result in the anomaly of the trans-
formation of a covenant by the lessee or condition
subsequent upon breach of which an estate already
granted may be determined into a grant of a larger
estate. In view of the established rule that oil and
gas leases are to be construed for the benefit of the
lessor and against the lessee (Summers, Oil and Gas
[1927], p. 372), of the ease with which, by a few apt
words, an extension of the term could be provided,
and of the criticism by the profession of some of the
Producers forms because they do not cover the con-
tingency of expiration of the lease while the well is
being drilled (Mills & Willingham, Law of Oil and
Gas [1926], p. 601), such conversion should not be
lightly attempted. There is no impelling reason for
it, as the textbooks contain a number of forms which
plainly provide for extending the time for comple-
tion of wells beyond the fixed term and which are
accessible to lessees. In fairness to lessors, exten-
sion provisions should be made plain.

It must be confessed that, on casual reading, the
language of the last provision of the development
clause seems to express an intention that the lessee
could begin a well at any time within the year and
complete it afterward if it exercised due diligence.
However, the actual intention cannot be determined
from the language, as much of the clause is inap-
propriate. The form was not made consistent in

filling the blanks. Thus, it provides for extensions of time to begin drilling after December, 1928, and yet it provides that the whole period to begin drilling shall not exceed one year from December 17, 1927; and, although such extensions are impossible, it provides rent of $1.00 per acre for them. Such provisions would have been appropriate in a longer lease. This leads to the speculation that in some leases the last provision may have a useful purpose in entire harmony with the term clause. Thus, in a long-term lease it may be used to require commencement and diligent prosecution at an intermediate period. There may be other proper uses which will be disclosed as what is now an infant industry in this State casts off its swaddling clothes. In any event, the most that can be said in favor of plaintiff's contention is that the lease is ambiguous. Under the rule, the construction must be in favor of the lessor.

Our construction of the lease is that the term clause dominates the time during which the lessee may operate without production; that the fixed time therein stated is not to be extended by mere commencement of a well, nor by indirect, ambiguous, and negative language in the development clause; but it may, and must, if at all, be extended by direct and affirmative provision therefor. Upon our initiation into this subject of litigation we feel impelled to encourage clarity and certainty in the time provisions of oil and gas leases.

The decree will be reversed, and one entered for defendant on her cross-bill declaring that the lease expired December 18, 1928, with costs to defendant.

NORTH, C. J., and WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred. The late Justice FELLOWS took no part in this decision.