(No. 31304.—)

J. O. HUGHES, Appellee, *vs.* WM. P. FORD *et al.,*
Appellants.

*Opinion filed May 18, 1950.*

HILL & DOLAN, and CRAIG & CRAIG, both of Mt.
Vernon, for appellants.

DONOVAN D. MCCARTY, of Olney, for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is an appeal by the defendant Wm. P. Ford, from
a decree of the circuit court of Richland County, which
cancelled a certain oil-and-gas lease given by J. O. Hughes,
the plaintiff, to said defendant, and ordered the City Na-
tional Bank of Dixon to deliver to Hughes two checks in
the amount of $500 each and ordering the Olney Trust &
Banking Company to pay to Hughes the proceeds of each
of said checks.

On May 17, 1948, Hughes filed a suit against the de-
fendant Ford, and against the banks above named and
alleged that he was the owner of 80 acres of land except
one half of the minerals in and under the same, and which

said one-half of the minerals were owned by O. C. Borah and Carrie L. Winter, who were each the owners of one fourth thereof. He alleged that on January 22, 1948, he and his wife executed an oil-and-gas lease to Wm. P. Ford which was for a term of four months or as long thereafter as oil and gas might be produced from said premises, and that said lease provided that if no well was commenced on the land within two months it should terminate as to both parties and that if a second well was not commenced within four months of the date of the lease, the lessee should surrender the undeveloped acreage except as to the 20-acre tract on which the first well was drilled. He also alleged the lease provided that if the lessee commenced a well within the term of the lease he should have the right to drill such well to completion with reasonable diligence and dispatch, and if oil or gas were found that the lease should continue as if such well had been completed within the term.

The complaint further alleged that the defendant Ford had failed to commence a well within the two months from the date of the lease, and that he did not continue thereafter with reasonable diligence and dispatch to drill a well, and that by reason thereof he forfeited his right to the lease. It was likewise alleged that on January 22, 1948, the defendant Ford entered into an escrow agreement with the plaintiff by the terms of which he was to deposit $1000 with the City National Bank of Dixon, and that the same was to be forfeited to the plaintiff in the event the said Ford failed and neglected to commence wells in accordance with the terms of said lease. It was alleged that the City National Bank of Dixon held two checks, each in the amount of $500 issued by the Olney Trust & Banking Company, pursuant to this agreement.

The plaintiff by his complaint likewise alleged that the drilling of the well was not, in fact, commenced as required by the lease and escrow agreement, and that the defendant

Ford refused to execute a release of the oil-and-gas lease and refused to authorize the escrow agent to deliver to the plaintiff the cashier's checks, and that, therefore, the plaintiff was compelled to resort to a court of equity for the purpose of securing an order for the delivery of the checks and for the cancellation of the lease.

The defendant Ford answered the complaint and denied that the oil-and-gas lease was for a term of four months and averred that the lease was to continue after the term of four months so long as operations for drilling were continued as provided in the lease. He denied that he had failed to comply with the terms of the lease and alleged that neither the lease nor the escrow agreement contained any provision requiring continuous drilling or drilling operations within the period of two months.

The matter was tried before the chancellor and it appears that there was no dispute about the execution of the lease and escrow agreement; likewise there was no dispute that on March 20, 1948, three individuals made a statement before a notary public that they had witnessed the commencement of the drilling of a well on the leasehold on that date, and that the hole was more than 10 feet deep at 2:45 P.M. It was likewise undisputed that a letter was addressed to the defendant Ford, requesting a release of the lease and a turning over of the checks and that he refused to do so.

It appears from the evidence that this leasehold was located about 13 miles southwest of Olney, near the Big Muddy and Little Wabash Rivers. The defendant Ford had been engaged in drilling oil wells throughout his lifetime and sometime shortly before March 19, 1948, he employed one John Lowery, who had a portable cable tool drilling rig, to commence the drilling of the well on the north 40 acres of the 80 acres involved. It appears that the well site was very low and muddy. Lowery was primarily a water-well driller and the type of rig which he

had and used on this well was the type commonly used for water wells. It appears that the defendant Ford applied for a permit to drill this particular well at a higher location but that the permission was denied by the Department of Mines and Minerals. It appears that with considerable difficulty, because of the muddy condition of the terrain, Lowery pulled his rig onto the site and, using an eight-inch bit, drilled to the approximate depth of 20 feet, and that he inserted a length of 5½-inch diameter casing therein, which projected about 13 feet out of the ground, and that he then pulled off the site with his equipment and nothing further was done thereafter to continue drilling up to the time suit was instituted.

It also appeared that a rotary rig was the customary machine used for drilling oil wells in this vicinity, and that it was practically the uniform practice to use 10⅝-inch surface pipe, and that in this vicinity a well using a 5½-inch casing was not commonly found. A geologist also testified that the strata which was to be drilled into at this location would have necessitated a well of approximately 3000 feet in depth, and that the machine used by Lowery was incapable of drilling a well to that depth.

It also appeared from the evidence that the defendant Ford had drilled wells in this vicinity, and that he had drilled a well immediately north of this site, and that he had an interest in such well, and that the well in question here would have been an offset to that well.

The trial court found that no oil well had been, in fact, commenced within 60 days as required by the lease and held that the plaintiff was entitled to the cancellation of his lease and that the $1000 which had been deposited in escrow should be delivered to him, and this appeal followed.

The appellants contend that the decree of the trial court is contrary to the manifest weight of the evidence and to the law of Illinois, and that the trial court should have

entered a decree finding that the defendant had, in fact, commenced the drilling of an oil well.

The oil-and-gas lease provided as follows: "It is agreed that this lease shall remain in force for a term of four months from this date and as long thereafter as oil, gas, casing-head gas, casing-head gasoline or any of them is produced from said leased premises or operations for drilling are continued as hereinafter provided, or operations are continued for the injection of water, brine and other fluids into subsurface strata. Provided, however, that for injection purposes this lease shall continue in full force and effect only as to well or wells so used and the ten acres contiguous thereto. * * * If no well be commenced on said land within two months from date hereof this lease shall terminate as to both parties and shall be null and void. If a second well has not been commenced within four months from date hereof, the lessees shall surrender the undeveloped acreage except the twenty-acre tract on which the first well was drilled."

The escrow agreement contained the following provision: "You are directed to hold this sum of One Thousand Dollars ($1,000.00) for a period of sixty (60) days from the date hereof and in the event satisfactory proof is presented to you showing that the drilling of a well has been actually commenced on either one of these tracts of land, then you are authorized and directed to hold the said sum of One Thousand Dollars ($1,000.00) for an additional sixty (60) days, making one hundred twenty (120) days in all from the date hereof, and in the event that within one hundred twenty (120) days from the date hereof, you are furnished with satisfactory proof showing that a second well has been commenced on either of said tracts of land, you are authorized and directed to refund the said sum of One Thousand Dollars ($1,000.00) herein referred to the said William P. Ford. However, in the event you do

not receive proof satisfactory to the commencement of the actual drilling of the first well within sixty (60) days from the date hereof, then you are authorized and directed to pay said sum of One Thousand Dollars ($1,000.00) to the said J. O. Hughes. In the event you have received proof of the actual commencement of drilling of the first well and do not receive proof satisfactory to J. O. Hughes of the drilling of the second well at the time herein specified, then you are authorized and directed to pay the said sum of One Thousand Dollars ($1,000.00) held according to the terms of this agreement to the said J. O. Hughes."

Both of these instruments were executed on January 22, 1948. Since both of these instruments were executed on the same day as part of one transaction, they may be construed together in ascertaining the intention of the parties, since rights of third parties have not intervened.

It is to be noted under the terms of the lease that the same was to remain in force for four months but that, "if no well be commenced on said land within two months from the date hereof this lease shall terminate as to both parties and shall be null and void."

The question, then, for the determination of the trial court was whether or not a well had been commenced. The defendant has cited numerous cases to the effect that the acts of a lessee in locating the well, employing a drilling contractor, moving machinery on the premises and the drilling of a hole for the purpose of setting surface casing preliminary to moving in a rotary drilling rig constituted the commencement of a well. It appears that in some jurisdictions there has been a distinction made between the meaning of "commencing a well" and "drilling a well." We have carefully reviewed each of the authorities cited by the defendant and we find that in each of those cases either the good faith and actual intention of the lessee to diligently prosecute the drilling activities appeared or that there was a provision for the payment of delay rentals

which was involved, and we do not believe that those cases are controlling of the case at bar. The lease entered into between the defendant and the plaintiff in this case indicates that it was the intention of the parties that a well should be drilled within the first 60 days of the lease, since the lease provides, "If a second well has not been commenced within four months from the date hereof, the lessees shall surrender the undeveloped acreage except the twenty-acre tract on which the first well was drilled." We believe that it clearly appears from this provision that the parties definitely intended that actual drilling operations should begin within the first two months' period. Also, it is to be noted from the terms of the escrow agreement that the defendant was to provide satisfactory proof showing that the drilling of a well had been actually commenced within the period of 60 days.

It is undisputed in the case at bar that after the water-drilling rig was pulled off the premises nothing was done by the defendant to further pursue the drilling of the first well. In his brief the defendant has pointed out that because of the letter of May 8, 1948, to him by the attorney for the plaintiff, in which he was advised that a complaint was going to be filed in court asking for cancellation of the lease, he was excused from thereafter pursuing his drilling operations. It is to be noted that approximately six weeks elapsed from the end of the original two months' term and the notice from the plaintiff's attorney, during which time the defendant could have, and we believe should have, pursued his efforts to drill a well. It is to be noted that on May 9, 1948, the defendant replied to the plaintiff's attorney's letter, and in his reply stated, "I failed to find anything in the lease or in the escrow agreement which provides for continuing drilling with diligence and dispatch other than a part of the lease which would hold a lease in force after the expiration of a primary term, and this primary term has not yet elapsed. So this part does not

apply either to the lease or to the escrow agreement as all this was based upon the commencement of the drilling." From this statement and from his testimony it is apparent that nothing was attempted to be done by the defendant toward the actual drilling of the first well within the first two months' period and that he was mainly interested in merely holding the lease.

It is also to be noted that the defendant was fully aware of the terrain and drilling conditions. Likewise the defendant had an interest in a producing well diagonally offsetting the Hughes' land, and while this fact would not necessarily indicate bad faith on the part of the defendant, it certainly must be considered in determining his attitude and conduct toward the lease involved in this case.

It is the policy of the law of Illinois, in dealing with oil-and-gas leases, that the same be construed in such manner as to do equity to both the lessor and the lessee. In the case of *Powers* v. *Bridgeport Oil Co.,* 238 Ill. 397, this court stated, "It is equitable that a party operating under an oil lease should be required promptly to develop the oil in the land which he controls. Especially is this so where the party holding the lease controls adjoining lands from which he is taking oil."

We construe the oil-and-gas lease of January 22, 1948, as creating an obligation upon the defendant to start drilling an oil well within two months from the date thereof, and that the commencement of an oil well meant that actual drilling operations be started, and that they proceed with due diligence, because of the fact that the parties provided a protection for the defendant by the terms of said lease in the event he was to drill only one well that the lease would not be terminated upon the acreage on which the first well was drilled. This provision in the lease clearly indicated that it was the intention of the parties that actual drilling operations were to be started. While we believe that the defendant has shown an inability to move in rotary

equipment during the first two months of the term, we do not believe that he has shown any excuse for failing to move rotary equipment prior to the date he was notified of the plaintiff's contemplated court action against him. There is considerable testimony to the effect that the size of the hole which was started was sufficient to permit the completion of the well as an oil well; however, it should be noted that the oil permit issued by the State of Illinois was for a well to be drilled with rotary equipment and in a strict sense it would appear that the activity by the defendant was not in compliance with the terms of his permit. Also there is no proof of the use of rotary equipment in small holes of this type in this area. From our review of the evidence it appears that the action taken in bringing in the water-drilling rig was merely an effort to hold the lease on a technical basis, and that defendant did not really intend to use this work in his oil well.

The defendant has contended that even if there was a breach of an implied covenant to proceed diligently there can be no forfeiture or cancellation, and cites several Illinois cases to this effect. In the case of *Poe* v. *Ulrey,* 233 Ill. 56, one of the cases cited by the defendant, it appears that the lease provided for the drilling of a well on the premises within 12 months or the payment of delay rentals. In addition it provided for the drilling of a test well on the block of leases of which this lease was a part on or before May 1, 1905, or that the lease be forfeited. A test well was actually drilled but no well was drilled on the leasehold premises. The lessee elected to pay the delay rentals provided in the lease and made a tender thereof which was refused. In that case it was argued that the lessee had forfeited his lease by his failure to diligently drill a well on the leased premises within 12 months. The court held that because of the fact that the parties had provided for an express forfeiture for failure to complete a test well on the block of leases before May 1, 1905, and because of

the provision for delay rentals, the parties had excluded any other grounds of forfeiture, the agreement for compensation excluding a forfeiture for failure to proceed with diligence and dispatch. This is entirely different from the case at bar, because in this case there is no provision for the payment of delay rentals. In the case of *Powers* v. *Bridgeport Oil Co.*, 238 Ill. 397, one of the cases cited by the defendant, a suit was brought to cancel a lease as a cloud on plaintiff's title. The lease contained an agreement by lessee to drill offsets and to prevent the drainage of oil from the leasehold premises by such drilling. In that case the lessee contended that the lease should not be cancelled because the lessor could be compensated by damages. The court stated, "A court of equity like a court of law cannot refuse to enforce a contract which parties have deliberately entered into because the enforcement thereof would work a forfeiture." The defendant has also cited the case of *Daughetee* v. *Ohio Oil Co.* 263 Ill. 518, to the effect that the remedy of a lessor for a breach of the covenants of a lease is not forfeiture but is an action for damages. A review of that case indicates that the lessor filed a suit at law for damages because of the failure of the lessee to develop the land described in the lease and to diligently market the oil which could have been obtained from wells sunk in the land. The lessee contended that no action could be maintained until the expiration of the lease. Our court held that when the lessee violated any of the express or implied covenants of the lease which resulted in damage to the lessor, a cause of action arose in favor of the lessor, and that he was not required to wait until the abandonment of the premises or the expiration of the lease to bring his action. We stated that to otherwise hold would be to preclude the lessor from receiving damages which he might have sustained by reason of the violation of the lease. In that opinion we did not say or indicate that the only remedy for the breach of the covenants in such a

lease was an action for damages but we merely held that an action for damages was available to the lessor before the end of the term.

We have carefully read the testimony of all the witnesses, and we believe that the decision of the chancellor is not contrary to the manifest weight of the evidence. He saw and heard the witnesses and we believe that he properly held that the plaintiff was entitled to a decree. We do not believe that the errors assigned by the defendant merit the reversal of the decree of the chancellor.

For the reasons stated in this opinion, the decree of the circuit court is affirmed.

*Decree affirmed.*