ILLINOIS MID-CONTINENT COMPANY, ET AL. *v.* TENNIS ET AL.

[No. 18,140. Filed December 14, 1951.]

*T. Morton McDonald* and *Douglas H. McDonald,* both of Princeton; and *Joe Vol Butt,* of Evansville, for appellants.

*Henry J. Brandt* and *Robert F. Fuchs,* both of Chicago, Illinois; *Sanford Trippet,* of Princeton; *Johnston, Thompson, Raymond & Mayer,* (of counsel), of Chicago, Illinois, for appellees.

WILTROUT, P. J.—This action was brought by appellants and is based upon rights claimed by them under certain oil and gas leases executed by the appellee, Michael Tennis.

Upon request duly made, the court made a special finding of facts and stated conclusions of law thereon adverse to appellants. The facts hereinafter set forth appear in the special finding.

The appellee, Michael Tennis, is the owner of certain real estate. On November 16, 1945, he executed an oil and gas lease to appellant, Illinois Mid-Continent Company. The other appellants acquired interests in this lease by divers and several assignments.

This lease contains the following provisions:

"It is agreed that this lease shall remain in force for a term of two (2) years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by lessee. . . .

"If no well be commenced on said land on or before the 16th day of November, 1946, this lease shall terminate as to both parties, unless the lessee shall on or before that date pay or tender to the lessor or to the lessor's credit . . . (Here follows a provision for the payment of a sum of money which is to operate as a rental and cover the privilege of deferring the commencement of a well for periods of twelve months each, which provisions are not involved in this appeal.)

"Should the first well drilled on the above described land be a dry hole, then and in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period for which rental has been paid, this lease shall terminate as to both parties, unless the lessee on or before the expiration of said twelve months shall resume the payment of rentals in the same amount and in the same manner as hereinbefore provided. . . . and if the lessee shall commence to drill a well within the term of this lease or any extension thereof, the lessee shall have the right to drill such well to completion with reason-

able diligence and dispatch, and if oil or gas or either of them be found in paying quantities, this lease shall continue and be in force with like effect as if such well had been completed within the term of years first mentioned.

"Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing.

"This lease is made on condition that unless lessee commences or causes to be commenced a test well for oil and gas on either the land covered by this lease or on the adjoining land, known as the Etta C. Parkinson 283.45 acres in sections 24, 25 and 13 in said township and range, within ninety days from the date of the execution of this lease and thereafter continues the drilling of such well to a depth sufficient to test the McCloskey lime in that area or to such lesser depth at which oil or gas is found in commercially paying quantities, then this lease shall be void as to both parties. If said first test well is drilled on the Parkinson land and is a commercially producing well, then unless lessee shall commence the actual drilling of a well on the premises covered by this lease within thirty days after the completion of said well on said Parkinson land and thereafter drill the same to a depth sufficient to test the McCloskey lime in that area or to such lesser depth at which oil or gas is found in commercially paying quantities, then this lease shall be void as to both parties.

"In the event lessee is prevented from complying with the drilling obligations imposed by this lease, by reason of floods, or impassable roads, then lessee shall have such additional time to comply with such drilling obligations as it was prevented from meeting such requirements by reason of floods or the impassable condition of roads."

Thereafter, appellee Tennis on May 10, 1946, executed an instrument in which he, for a valuable consideration, ratified and confirmed the lease executed November 16, 1945, "providing operations for the drilling of a well be commenced on or before July 15, 1946." On July 10, 1946, he again executed a similar instru-

ment ratifying and confirming the lease executed November 16, 1945, "providing operations for the drilling of a well be commenced on or before September 1, 1946."

The plaintiffs drilled a test well on the Parkinson lands within the time limited, which well resulted in the production of oil.

Prior to September 1, 1946, appellants commenced a well on the Tennis land, designated as Tennis No. 1, which well is a dry hole.

After completing Tennis No. 1, appellants did not commence a second well on the land of appellee Tennis within twelve months nor at any time before the two year termination date mentioned in the lease executed November 16, 1945, and there was no producing well on the Tennis land at that time.

Appellants argue that the lease of November 16, 1945, did not terminate at the end of two years from its date, because they were prevented from complying with the drilling obligations imposed by reason of floods and impassable roads, and had such additional time to comply with such drilling obligations as they were prevented from drilling by such conditions. They claim that under the undisputed evidence, such time was more than 259 days, or to July 31, 1948.

Appellants alleged in their complaint that they were prevented from complying with the drilling obligations by reason of floods or impassible roads.

The only finding of the court bearing on the ▮▮▮ situation reads as follows:

"The court further finds that the county highways of this county were posted against heavy hauling and were so posted each year for many years prior to 1947 from January 1st for a period of 90 days, but that hauling was permitted on said highways when the highways were frozen. . . . The court further finds that on October 10, 1947, and

for approximately two years before that date and since said time, the plaintiffs had drilled many oil wells in the vicinity of the Tennis land and used the same county highways to transport their oil well drilling equipment as would have been used in moving drilling equipment to the location of the Tennis land."

The habendum clause of this lease provided:

"It is agreed that this lease shall remain in force for a term of two (2) years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by lessee."

The time for commencing a well as set forth in the lease and the instruments ratifying it and providing a later date for the commencement of operations for the drilling of a well, did not have the effect of extending the definite term of the lease as fixed in the habendum clause. *Indiana, etc., Oil Co.* v. *Grainger* (1904), 33 Ind. App. 559, 70 N. E. 395; *Brown et al.* v. *Fowler et al.* (1902), 65 Ohio St. 507, 63 N. E. 76; *Humphreys* v. *Fletcher* (1922), 27 N. M. 639, 204 Pac. 70; *J. J. Fagan & Co.* v. *Burns* (1929), 247 Mich. 674, 226 N. W. 653. It is stated in 2 Summers, *Oil and Gas* 162, §302 (Perm. ed.):

"Extension of the definite term of the lease as created by the habendum clause thereof should not be confused with the extension of the period for delay in the commencement of drilling provided for in the drilling clause. Extensions of time for the commencement of drilling under the drilling clauses of the lease do not have the effect of extending the definite term of the lease fixed by the habendum."

Even though the time for commencing a well or drilling might be extended beyond the term of the lease as set forth in the habendum clause, this would avail appellants nothing. The lease provided that, "In the event

lessee is prevented from complying with the drilling obligations imposed by this lease, by reason of floods, or impassable roads, then lessee shall have such additional time to comply with such drilling obligations as it was prevented from meeting such requirements by reason of floods or the impassable condition of roads." The burden was upon appellants to prove the material allegations of their complaint, and the court by failing to find such facts in their favor, found against them. The evidence does not force a contrary conclusion. There is no evidence that appellants would have commenced a well or operations for the drilling of a well if there had been no floods or impassable roads. Inferences may be drawn from the evidence that they would not have. It is not shown that the condition of the roads or floods prevented action on their part at any time. Such inaction may have resulted for other reasons.

In view of our holding as to this lease, it becomes immaterial to determine whether this lease was terminated by agreement of the parties, or was terminated when the lease hereafter mentioned was entered into.

On October 10th, 1947, prior to the expiration of the term of two years designated in the habendum clause of the lease dated November 16, 1945, the appellee Tennis executed a new lease to the appellants Dee and Dee. Appellants allege, and the court found, that Dee and Dee were acting in behalf of themselves and all other appellants. This lease followed closely the form of the original lease, but contained certain essential differences. It was for a term of one year from date, and as long thereafter as oil or gas, or either of them, is produced from said land by lessee. It provided:

"If no well be commenced on said land on or before the 16th day of January, 1948, this lease shall terminate as to both parties. If the lessee

shall commence to drill a well within the term of this lease or any extension thereof, the lessee shall have the right to drill such well to completion with reasonable diligence and dispatch, and if oil or gas, or either of them be found in paying quantities, this lease shall continue and be in force with like effect as if such well had been completed within the term first mentioned.

"In the event lessee is prevented from complying with the drilling obligations imposed by this lease, by reason of floods, then lessee shall have such additional time to comply with such drilling obligations as it was prevented from meeting such requirements by reason of floods."

It will be noted that this lease refers to floods only and not to impassable roads as well, as did the original lease.

On January 16th and 17th, 1948, the appellants caused to be dug slush pits by a bulldozer at a point 330 feet west of the east line of the Tennis farm, which location was approximately 660 feet west of a well being drilled on the adjoining farm of one Williams immediately east of the Tennis land. The bulldozer was transported or driven to the location on the Tennis land over the county highway that would have been used to transport a drilling rig to the Tennis land. The bulldozer weighed approximately sixteen tons. The well drilled on the Williams land was a dry hole and the drilling rig used thereon was torn down and transported away from said land during the first part of the month of January, 1948, over the public highway that would be used to transport or move a drilling rig to the Tennis land.

The court further found that flood waters covered only a small portion of the Tennis land from October, 1947, to February, 1948, and at no time did flood water cover the location of the slush pits dug on the Tennis land; that the flood water covered the north part of

the Tennis farm during part of this time, but at no time did the appellants ever stake a location or attempt in any way to commence a well on that portion of the Tennis land.

The court found that no well was commenced on the Tennis land on or before January 16, 1948, pursuant to the lease of October 10, 1947. The appellants challenge this finding, claiming that the evidence requires a finding that a well was commenced on said land on or before the 16th day of January, 1948, by the making of a survey, the staking of a location, the securing of a permit, and the digging of slush pits and contracting for drilling rigs. It is stated in 2 Summers, *Oil and Gas* 256, §349 (Perm. ed.) :

> "Where the lessee covenants to begin or commence a well or drilling operations within a certain definite time, and his failure to do so places him under a liability to have his lease forfeited, or a duty to pay delay rental, it becomes necessary to determine what act . . . will satisfy this requirement. The general rule seems to be that actual drilling is unnecessary, but that the location of wells, hauling lumber on the premises, erection of derricks, providing a water supply, moving machinery on the premises and similar acts preliminary to the beginning of the actual work of drilling, *when performed with the bona fide intention to proceed thereafter with diligence toward the completion of the well,* constitute a commencement or beginning of a well or drilling operations within the meaning of this clause of the lease." (Emphasis supplied.)

Regardless of whether the acts here shown might or might not constitute the commencement of a well or the commencement of the drilling of a well, if they were not done in good faith and for the purpose of actually proceeding thereafter with the drilling of a well, they do not constitute the commencement of the drilling.

24 Am. Jur., Gas and Oil, §59, p. 563; *Hughes* v. *Ford* (1950), 406 Ill. 171, 92 N. E. 2d 747.

Under the evidence, the court could reasonably have concluded that there was no commencement of a well on or before January 16, 1948, because there was no good faith, but merely an effort to hold· the lease on a technical basis. Along with the evidence on this point, the court could have considered the statement of appellant Dee made of January 16, 1948, that "they were going to dig a slush pit to 'validate' the lease; that the staking of the location which involved but one stake was done on January 16, 1948." Covell, an employee of the Dee-Watson Drilling Company, testified that around 10 o'clock A. M. he was given oral instructions by the appellant John Dee to commence drilling a well, but these instructions were not given until around 10 o'clock on the morning of January 16th, and he thereafter arranged to have the slush pits dug. Only the day before the drilling rig had been moved from the place where it was located to a place farther away from the Tennis land. The evidence does not show that a permit was applied for or issued and in effect on January 16, 1948, to drill this particular well. Appellants' complaint, it is noted, alleges that the slush pits were dug and "that thereafter it was determined that the location so selected should not be drilled·inasmuch as in the opinion of these plaintiffs such location was not satisfactory in accordance with the information they obtained from their geological and geophysical survey to warrant the location being drilled;."

By what is designated their second amended cross-complaint, the appellees sought and secured a determination that a lease executed by the appellee Tennis to the appellee Holland is a valid and subsisting lease, and appellants complain that this determination is er-

roneous. The trial court concluded, we hold correctly, that appellants' leases have terminated. Therefore, appellants are not prejudiced by this determination as to the lease to appellee Holland.

Judgment affirmed.

NOTE.—Reported in 102 N. E. 2d 390.