(No. 34280.—)

W. A. FREELAND *et al.*, Appellants, *vs.* RALPH H. EDWARDS, Appellee.

*Opinion filed May 23, 1957.*

WILLIAM and RESCH, of Casey, for appellants.

RAYMOND O. HORN, of Salem, for appellee.

Mr. JUSTICE DAVIS delivered the opinion of the court:

This case involves the construction of an oil-and-gas lease from lessor-plaintiffs to defendant. After defendant drilled a dry hole, and the primary term of the lease had expired, the lessor-plaintiffs executed a further oil-and-gas lease to plaintiff Marion Partlow. Thereafter plaintiffs brought this action against defendant for a permanent injunction to restrain him from drilling on their land and for a cancellation of his lease. Defendant sought affirmative relief in the form of a declaratory judgment upholding the continuing validity of his lease and adjudging plaintiff Partlow's lease null and void. Upon hearing, the trial court dismissed plaintiff's complaint and granted such declaratory judgment.

The basic facts were stipulated. On March 2, 1955, the plaintiffs, with the exception of Partlow, executed a standard commercial oil-and-gas lease to defendant, which provided for a primary term of 60 days from the date and "as long thereafter as oil, gas * * * is produced * * * or operations for drilling are continued as hereinafter provided * * *." The lease, prior to certain alterations, was a standard printed form, referred to as "Producers 88 Sp. T.O.P. Rev. 2-54," and contained the further material provisions:

"If no well be commenced on said land on or before one year from date hereof, this lease shall terminate as to both parties, *unless the lessee on or before that date shall pay or tender to the lessor or to the lessor's credit in the * * * Bank, at * * * or its successors, which shall continue as the depository, regardless of changes in the ownership of said land, the sum of * * * Dollars, which shall operate as a rental and cover the privilege of*

*deferring the commencement of a well for twelve months from said date. In a like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively. All payments or tenders may be made by check or draft of the lessee or any assignee thereof, mailed or delivered on or before the rental paying date.*

"Should the first well drilled on the above described land be a dry hole, then, and in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period for which rental has been paid, this lease shall terminate as to both parties, unless the lessee on or before the expiration of said twelve months shall resume the payment of rentals in the same amount and in the same manner as hereinbefore provided. And it is agreed that upon the resumption of payment of rentals, as above provided, that the last preceding paragraph hereof, governing the payments of rentals and the effect thereof, shall continue in force, just as though there had been no interruption in the rental payments."

The italicized portion of the above provision, known as the delay-rental clause, was stricken from the contract, and the provision commonly referred to as the dry-hole clause remained intact. The lease further contained a well-completion clause which provided in part, "If the lessee shall commence to drill a well within the term of this lease or any extension thereof, the lessee shall have the right to drill such well to completion * * *."

The defendant failed to commence a well within the primary term of 60 days from March 2, 1955, and the lessor-plaintiffs, for a stated consideration of one dollar, ratified and extended the lease to May 17, 1955.

Prior to May 17, 1955, defendant commenced a well which was completed as a dry hole and plugged shortly thereafter. On November 4, 1955, the lessor-plaintiffs executed a new oil-and-gas lease to the plaintiff Partlow which was duly recorded. Nothing was done by defendant from the time of the plugging of the dry hole until April 29, 1956, when he moved on the property and commenced drilling a second well. His action gave rise to this litigation.

The only testimony was that of defendant's witness, concerning a conversation with one of the lessor-plaintiffs,

wherein this lessor-plaintiff allegedly stated that he had a lease on his property and did not think he could give another.

Plaintiffs contend that defendant's lease expired when the well commenced within the primary term was determined to be a dry hole and plugged. Defendant, however, urges that the dry-hole provision extended the term of the lease for an additional 12 months from the last date of the primary term of the lease, or the extension thereof.

The only issue before us is the proper construction of the instrument. While other jurisdictions have announced doctrines of construction especially applicable to oil-and-gas leases, such rules appear to be mere *ad hoc* applications of generally accepted principles of the construction of contracts. (2 Summers, Oil and Gas, secs. 371-372, pp. 269-284.) This court has consistently applied the same rules of construction and interpretation to such leases as to other contracts. *O'Donnell* v. *Snowden & McSweeney Co.* 318 Ill. 374; *Carter Oil Co.* v. *Dees,* 340 Ill. App. 449; *Minerva Oil Co.* v. *Sohio Petroleum Co.* 336 Ill. App. 372.

The instrument in question is a form of modern oil-and-gas lease which developed by an evolutionary process, nourished by the growth and relevant changing circumstances in the industry. (2 Summers, Oil and Gas, secs. 281-298, pp. 103-138.) It contained four clauses material to this controversy: (1) the habendum clause containing the term of the lease; (2) the delay-rental clause providing for rentals to be paid within the term of the lease, if a well had not been commenced; (3) the dry-hole clause excusing payment of delay rentals for a certain period after the drilling of a dry hole; and (4) the well-completion clause permitting lessee to diligently complete a well commenced within the term of the lease.

In this lease, as in all modern leases, the habendum clause containing the term of the lease, was divided, as to duration, into two parts, the definite or primary term,

commonly called the exploratory period, and the indefinite term, beyond the exploratory period, for which the lease may be extended by production. (2 Summers, Oil and Gas, sec. 292, p. 125.) Here the parties agreed on a definite or primary term of 60 days, and an indefinite term of "as long thereafter as oil, gas * * * is produced * * * or operations for drilling are continued as hereinafter provided * * *."

The delay-rental clause, which was stricken from the instant lease, is generally considered an inherent part of the comprehensive scheme to secure the testing and development of the land for oil and gas through the creation of legal relations designed to be fair to both parties. (2 Summers, Oil and Gas, sec. 331, pp. 187-188.) We think it clear that the dry-hole clause was not intended to extend the definite term contained in the habendum clause, but rather appears to have been left in the lease by inadvertence, which is evidenced by the one-year provision contained in the unstricken portion of said clause. (Cf. 2 Summers, Oil and Gas, sec. 303, pp. 167-173; *Fagan & Co.* v. *Burns*, 247 Mich. 674, 226 N.W. 653; Ann., 67 A.L.R. 522.) Because the parties chose to create an extremely short term in the habendum clause, there was no purpose to be served by a delay-rental provision and so it was stricken.

In general, a dry-hole clause is designed for the purpose of relieving the lessee of the duty of paying delay rental for the period prescribed, after the completion of a dry hole. (2 Summers, Oil and Gas, sec. 351, pp. 264-267; *Harrel* v. *Atlantic Refining Co.* 123 F. Supp. 70.) The clause in question neither contains a reference to an extension of the term of the lease, nor does it provide for additional time for the commencement of a second well, predicated upon the drilling of a dry hole, to be commenced within the primary term. It merely provides that, after a dry hole has been drilled, if a second well is not commenced on the land within 12 months from the expiration of the

last rental period, the lease shall terminate unless delay rentals be resumed within 12 months of such last rental period. Upon resumption of the payment of rentals, the lease provides that the delay-rental clause (which clause was stricken from this lease) "shall continue in force just as though there had been no interruption in the rental payments."

Both the dry-hole clause, and the following drilling provision: "If no well be commenced on said land on or before one year from the date hereof, this lease shall terminate as to both parties," are cast in words of termination of an existing lease, rather than in terms of extension. Both would be applicable, unambiguous and harmonious, if the parties had made the primary term extend for several years. Then the express term of the lease would be limited by a termination provision for the benefit of the lessor, requiring the lessee to drill within a year. These clauses must be construed in the light of the purposes for which they were employed.

The dry-hole and the drilling clauses were rendered inapplicable by the short primary term of the lease. The failure to strike them from the printed form may give rise to an ambiguity, but it cannot alter the clear language of the habendum clause which controls the exploratory period and the indefinite term beyond, for which the lease may be extended by production.

Defendant earnestly contends that the dry-hole clause extended the term of the lease for 12 months, the consideration being the drilling of a dry hole within the primary term. He apparently concedes that the dry hole-clause was ambiguous, and therefore sought interpretation through the aid of extrinsic evidence. His witness testified concerning an oral statement of one of the lessor-plaintiffs, made outside the presence of the other plaintiffs, that he had a lease on his property and did not think he could give another. We have reviewed this testimony. It is ambiguous

with reference to both the property and lease referred to, and we believe that it is neither an admission against interest, nor competent evidence of the intention of the parties. Viewed most favorably, it is the statement of one lessor-plaintiff, with an undisclosed interest in the premises, expressing doubt as to the legal relationship created by a written agreement. It is of no aid in interpreting the contract. If we were to resort to a practical construction, we would find greater significance in the fact that all parties regarded it as necessary for defendant to obtain an extension of the primary term in order to commence drilling on the premises. 12 I.L.P., sec. 232, p. 405 *et seq.*

If we consider the manifest intention of the parties, it is clear that lessor-plaintiffs desired a short primary term, which, even on extension, was very limited; and that it was not contemplated that the one-year drilling clause would extend the primary term. The record is without evidence of intent of the parties that the dry hole clause should have such overriding effect.

The primary object of construction is to give effect to the intention of the parties, greater regard being given to such intent, when clearly revealed, than to the particular words or clauses of the contract, (12 I.L.P., sec. 212, page 366; *Cedar Park Cemetery Assn.* v. *Village of Calumet Park,* 398 Ill. 324; *Jones & Laughlin Steel Co.* v. *Graham,* 273 Ill. 377,) and we cannot establish a contract different from that expressed in the written agreement. *Decatur Lumber and Manufacturing Co.* v. *Crail,* 350 Ill. 319; *Hein* v. *Shell Oil Co.* 315 Ill. App. 297.

If we give any effect to the dry-hole clause, which is rendered ambiguous by the striking of the delay-rental clause, we must disregard the clear limitation of the primary term. However, neither the provisions of the lease, nor the testimony denote any intention to give defendant a year's lease for the drilling of a dry hole. To sustain the defendant's position, we would have to create an entirely

402

new agreement between the parties, contrary to their intent, and for which they never bargained. The defendant had the right to complete the well duly commenced within the extension of the primary term, and there being no production to extend it, the lease ended by its own terms.

Accordingly the trial court erred in dismissing plaintiffs' complaint and in declaring plaintiff Partlow's lease void. The declaratory judgment is therefore reversed and the cause is remanded with directions to issue injunction and enter decree in accordance with the views expressed herein.

*Reversed and remanded, with directions.*