351 N.E.2d 57 (1976)
CITIZENS BY-PRODUCTS COAL COMPANY, Plaintiff-Appellant,
v.
Keith ARTHALONY et al., Defendants-Appellees.
No. 1-975A158.
Court of Appeals of Indiana, First District.
July 13, 1976.
Harry V. Huffman, Indianapolis, James M. Buthod, Evansville, James R. McClarnon, Michael B. Cracraft, Smith, Morgan & Ryan, Indianapolis, for appellant.
Joe Vol Butt, Evansville, John O. Moomaw, Bloomfield, for appellees.
ROBERTSON, Chief Judge.
The plaintiff-appellant Citizens is appealing an adverse decision upon its complaint for declaratory judgment in which Citizens sought to have itself declared the owner of the only valid oil and gas lease upon certain real property owned by the defendant-appellee Doris Antibus. The issue involves the construction of an oil and gas lease. We are of the opinion that the *58 question was not decided correctly as a matter of law in the trial court and, accordingly, reverse.
(Because of our decision to reverse we need not decide a second issue raised by Citizens involving the admissibility of certain facts outside the scope of the various instruments referred to later in this opinion. Although we shall refer to those questioned facts in the opinion, that does not necessarily mean that they were or were not properly considered by the trial court.)
The cause was submitted to the trial court by means of an agreed statement of facts which included certain instruments as exhibits. A summary of those facts shows that Doris Antibus owned certain real estate in Greene County, Indiana. Doris, through her husband Harvey, negotiated with defendants-appellees Smith and Chapman (Bridgeport Drilling) for a renewal or extension of an oil and gas lease they held on the Antibus property. Harvey demanded a rental payment and payment for advance damages as a condition to signing a new lease, Bridgeport agreed and, at Harvey's insistence, made a notation on the check which stated "Rental and Advance Damages". At that time, the 28 of March, 1972, Antibus executed an oil and gas lease to Bridgeport. The lease was recorded the next day.
Sometime during the year Bridgeport drilled and abandoned a dry-hole on the Antibus property. The lease was subsequently assigned to the defendant-appellee Artholony.
On the 28th of March, 1973, the Antibuses, although expressing doubt as to whether the 1972 lease was still good, executed an oil and gas lease to Citizens, which was subsequently recorded. As of that date no oil or gas was being produced nor were any operations in progress to produce oil and gas. However, a few months later Arthalony brought in a producing well.
As previously indicated, Citizens brought suit to determine which of the two leases was valid. The resulting decision by the trial court that the 1972 lease was the valid lease forms the basis of this appeal.
The essence of the position taken by Citizens is that the 1972 lease expired on or before the beginning of their lease by operation of the wording of the habendum clause in the 1972 lease.
The defendants-appellees (referred to as Arthalony for convenience hereafter) contend that the dry-hole clause of the 1972 lease properly extended the life of that lease beyond the stated one-year period.
The 1972 lease was a Producers 88 Sp. T.O.P. with the appropriate blanks being filled in and certain wording stricken by being lined out.
The habendum, or term, clause in that lease reads:
"It is agreed that this lease shall remain in force for a term of one year from this date and as long thereafter as oil, gas, casing-head gas, casing-head gasoline or any of them is produced from said leased premises or operations for drilling are continued as hereinafter provided, ..." [The remainder of this clause provides for injection and is not pertinent to the appeal.]
The delay rental clause reads:
"If no well be commenced on said land on or before one year from date hereof, this lease shall terminate as to both parties ..."
The remainder of that clause was stricken from the lease.[1]
*59 The dry-hole clause reads:
"Should the first well drilled on the above described land be a dry-hole, then, and in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period for which rental has been paid, this lease shall terminate as to both parties, unless the lessee on or before that expiration of said twelve months shall resume the payment of rentals in the same amount and in the same manner as hereinbefore provided. And it is agreed that upon the resumption of the payment of rentals, as above provided, that the last preceding paragraph hereof [the delay rental clause], governing the payments of rentals and the effect thereof, shall continue in force just as though there had been no interruption in the rental payments."
It should be first noted that the habendum, or term, clause in the 1972 lease specifically states that it has a one year definite term unless extended by production or drilling operations as provided for within the lease.
The general rule used to determine the period of time for which an oil and gas lease is valid has been aptly summarized by a Kentucky decision. It states:
"... . the fixed term dominates the period for which a lease shall run, and if any other clause is not in harmony with the term clause, and does not purport in words to modify the term clause, then the term clause must prevail."

Vaughn v. Hearrell (Ky. 1961), 347 S.W.2d 542 at 545.
This proposition has also found general acceptance in Indiana. In Illinois Mid-Continent Co. v. Tennis (1951), 122 Ind. App. 17, 102 N.E.2d 390, our Appellate Court stated:
"The time for commencing a well as set forth in the lease and the instruments ratifying it and providing a later date for the commencement of operations for the drilling of a well, did not have the effect of extending the definite term of the lease as fixed in the habendum clause. Indiana, etc., Oil Co. v. Grainger (1904), 33 Ind. App. 559, 70 N.E. 395; Brown et al. v. Fowler et al. (1902), 65 Ohio St. 507, 63 N.E. 76; Humphreys v. Fletcher (1922), 27 N.M. 639, 204 P. 70; J.J. Fagan & Co. v. Burns (1929), 247 Mich. 674, 226 N.W. 653. It is stated in 2 Summers, Oil and Gas, 162 § 302 (Perm. Ed.):
`Extension of the definite term of the lease as created by the habendum clause thereof should not be confused with the extension of the period for delay in the commencement of drilling provided for in the drilling clause. Extensions of time for the commencement of drilling under the drilling clauses of the lease do not have the effect of extending the definite term of the lease fixed by the habendum.'"
122 Ind. App. at 23, 102 N.E.2d at 392.
A case factually similar to the present appeal is Freeland v. Edwards (1957), 11 Ill.2d 395, 142 N.E.2d 701. Although the lease in Freeland, supra, only had a primary term of 60 days, the delay-rental clause had the same portion stricken as did the lease in this appeal. In holding that the first lease had expired, the Illinois Supreme Court stated that striking such portion of the dry-hole clause rendered the *60 clause ambiguous at least, and surplusage at most as it related to the remainder of the lease.
It is in a similar vein that we believe the removal of the provision for rental substantially destroys the purpose of the dry-hole clause for the reason that:
"In general, a dry-hole clause is designed for the purpose of relieving the lessee of the duty of paying delay rental for the period prescribed, after the completion of a dry-hole. 2 Summers, Oil and Gas, § 351, pp. 264-267; Harrel v. Atlantic Refining Co., D.C., 123 F. Supp. 70."
11 Ill.2d at 399, 142 N.E.2d at 704.
See: Bain v. Portable Drilling Co. (1948), 200 Okla. 569, 198 P.2d 207; 3 Williams, Oil and Gas Law § 614. 2, pp. 252-255.
Utilizing the foregoing principles in an analysis of the 1972 lease, we believe it can readily be seen that the wording of the dry-hole clause requires either that the second well be started within twelve months of the expiration of the last rental period or that rent shall be paid. However, since all provisions for a rental period or rental were deleted from the lease, the purpose of the clause is defeated, and the deletion has the effect of supporting both the term clause and the rental clause in saying the lease has a one year life, in the absence of production.
In so holding we do not ignore the fact that money characterized as "Rental and Advance Damages" passed from lessee to lessor. Our holding does recognize, however, that whatever the character of that transaction, it was done outside of the scope of the 1972 lease insofar as any rental is concerned and cannot be relied upon by Arthalony to extend the life of the lease beyond the time specified therein.
This cause is reversed and remanded for the purpose of entering a judgment consistent with this opinion.
Reversed and remanded.
LOWDERMILK and LYBROOK, JJ., concur.
NOTES
[1] The stricken portion reads: "... . unless the lessee on or before that date shall pay or tender to the lessor or to the lessor's credit in the ____ Bank at ____, or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of ____ Dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from said date. In a like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively. All payments or tenders may be made by check or draft of lessee or any assignee thereof, mailed or delivered on or before the rental paying date."